*Appeal No. 18-17356*

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

---

THE CENTER FOR INVESTIGATIVE REPORTING,
*Plaintiff-Appellant,*

v.

UNITED STATES DEPARTMENT OF JUSTICE,
*Defendant-Appellee.*

---

On Appeal from the United States District Court
for the Northern District of California, San Francisco
Case No. 3:17-cv-06557-JSC
Magistrate Judge Jacqueline Scott Corley

---

## OPENING BRIEF OF PLAINTIFF-APPELLANT THE CENTER FOR INVESTIGATIVE REPORTING

---

D. Victoria Baranetsky (CSB No. 311892)
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: 510.809.3160

Andrew P. Bridges (CSB No. 122761)
Ciara N. McHale (CSB No. 293308)
Meghan E. Fenzel (CSB No. 324139)
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500

Attorneys for Plaintiff-Appellant
THE CENTER FOR INVESTIGATIVE REPORTING

## CORPORATE DISCLOSURE STATEMENT

Pursuant to 26.1 of the Federal Rules of Appellate Procedures, Appellant

The Center for Investigative Reporting (CIR) certifies that it does not have a parent

company and as a nonprofit organization there is no stock or any other interest to

report.

Dated: March 21, 2019        Respectfully submitted,

                            FENWICK & WEST LLP

                            By: *s/D. Victoria Baranetsky*
                              D. Victoria Baranetsky

                              Andrew P. Bridges
                              Ciara N. McHale
                              Meghan E. Fenzel

                              Attorneys for Plaintiff-Appellant
                              THE CENTER FOR INVESTIGATIVE
                              REPORTING

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF AUTHORITIES ...............................................................................iv

INTRODUCTION ................................................................................................1

STATEMENT OF JURISDICTION ....................................................................7

STATEMENT OF THE ISSUES .........................................................................7

STATEMENT OF THE CASE.............................................................................8

      A.     The Freedom of Information Act .......................................................8

      B.     ATF's History of Releasing Trace Data and the
              Tiahrt Exceptions for Release of Certain Trace Data ........................9

      C.     CIR's Freedom of Information Act Request....................................12

      D.     ATF's Denial of Access and the District Court Proceedings ...........13

SUMMARY OF THE ARGUMENT ...................................................................15

STANDARD OF REVIEW ................................................................................16

ARGUMENT ......................................................................................................16

I.     THE TIAHRT AMENDMENT WITHIN THE 2012
       CONSOLIDATED APPROPRIATIONS ACT DOES NOT
       QUALIFY UNDER FOIA EXEMPTION 3 AS A BASIS OF
       WITHHOLDING INFORMATION FROM CIR'S FOIA REQUEST. ......16

      A.     Congress Enacted the Current and Operative
              2012 Consolidated Appropriations Act After
              Enactment of the OPEN FOIA Act of 2009. ....................................17

      B.     The 2012 Consolidated Appropriations Act Does Not Include
              the Specific Citation to Exemption 3 in Its Tiahrt Amendment
              Language as Required by OPEN FOIA Act of 2009. ........................18

**TABLE OF CONTENTS**
**(continued)**

Page

C.  Only the 2012 Consolidated Appropriations Act
    Governs CIR's FOIA Request and It Permits
    Disclosure of the Records CIR Seeks. ................................................19

D.  Because the 2012 Consolidated Appropriations Act
    Affords Agency Discretion in the Tiahrt Amendment, as
    ATF Has Shown by Its Varying Interpretations of the Rider,
    It Cannot Qualify as a Withholding Statute. ......................................23

II.  THE INFORMATION CIR SEEKS IS "STATISTICAL
     AGGREGATE DATA" UNDER EXCEPTION (C) OF THE
     TIAHRT AMENDMENT. ..............................................................25

A.  The Phrase "Statistical Aggregate Data" Has a Broad and Plain
    Meaning That Includes the Records Sought by CIR. ........................26

B.  Although the Statutory Text Is Clear, Legislative History Also
    Supports CIR's Interpretation. ........................................................31

C.  ATF Has Previously Published the Type of Statistical
    Aggregate Data CIR Seeks ...............................................................35

III.  DISCLOSURE OF INFORMATION IN A DATABASE, EVEN
      WITH REDACTIONS, DOES NOT REQUIRE CREATION OF A
      NEW DOCUMENT. ...................................................................41

CONCLUSION ...................................................................................49

STATEMENT OF RELATED CASES ..................................................50

CERTIFICATE OF COMPLIANCE ......................................................51

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abdeljabbar v. Bureau of Alcohol, Tobacco & Firearms*,
    74 F. Supp. 3d 158 (D.D.C. 2014).................................................21, 22

*Animal Legal Def. Fund v. U.S. Food & Drug Admin.*,
    836 F.3d 987 (9th Cir. 2016) (en banc) (per curiam) ........................16

*Ayuda, Inc. v. FTC*,
    70 F. Supp. 3d 247 (D.D.C. 2014).....................................................47

*Bothwell v. CIA*,
    No. 13-cv-05439, 2014 WL 5077186 (N.D. Cal. Oct. 9, 2014)........45

*Carlson v. U.S. Postal Serv.*,
    504 F.3d 1123 (9th Cir. 2007) ...........................................................18

*Caruso v. U.S. Bureau of Alcohol, Tobacco & Firearms*,
    495 Fed. App'x. 776 (9th Cir. 2012) ..................................................21

*Caruso v. U.S. Bureau of Alcohol, Tobacco & Firearms*,
    495 Fed. Appx. 776 (9th Cir. 2012) ..................................................22

*Conn. Nat'l Bank v. Germain*,
    503 U.S. 249 (1992)....................................................................28, 31

*Dukes v. Wal-Mart Stores, Inc.*,
    222 F.R.D. 137 (N.D. Cal. 2004) ......................................................29

*F.A.A. v. Cooper*,
    566 U.S. 284 (2012)...........................................................................28

*Fowlkes v. Bureau of Alcohol, Tobacco, Firearms and Explosives*,
    139 F. Supp. 3d 287 (D.D.C. 2015)...........................................4, 21, 22

*Hunsaker v. United States*,
    902 F.3d 963 (9th Cir. 2018) .............................................................26

*In re Glacier Bay*,
    944 F.2d 577 (9th Cir. 1991) .......................................................20, 22

iv

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*In re Roman Catholic Archbishop of Portland in Or.*,
661 F.3d 417 (9th Cir. 2011) ........................................................26, 27

*Kensington Research & Recovery v. U.S. Dep't of Hous. & Urban Dev.*,
620 F. Supp. 2d 908 (N.D. Ill. 2009)..................................................46

*Klimas v. Comcast Cable Commc'ns, Inc.*,
465 F.3d 271 (6th Cir. 2006) ..............................................................28

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
624 F.3d 1083 (9th Cir. 2010) ............................................................26

*Lahr v. Nat'l Transp. Safety Bd.*,
569 F.3d 964 (9th Cir. 2009) ..............................................................8

*Long v. ICE*,
No. 17-cv-01097 (APM), 2018 WL 4680278 (D.D.C. Sept. 28, 2018)............45

*Milavetz, Gallop & Milavetz, P. A. v. United States*,
559 U.S. 229 (2010)............................................................................31

*Muhammad v. U.S. Dep't of Justice*,
No. 09-1255, 2007 WL 433552 (S.D. Ala. Feb. 6, 2007) ............................10, 16

*N.L.R.B. v. Robbins Tire & Rubber Co.*,
437 U.S. 214 (1978)............................................................................8, 9

*Nat'l Sec. Counselors v. C.I.A.*,
898 F. Supp. 2d 233 (D.D.C. 2012)..................................................41, 42, 46, 48

*NLRB v. Sears, Roebuck & Co.*,
421 U.S. 132 (1975)............................................................................41

*Pac. Fisheries, Inc. v. United States*,
539 F.3d 1143 (9th Cir. 2008) ............................................................48

*Penn v. U.S. Dep't of Justice*,
No. S-10-2494, 2012 WL 761741 (E.D. Cal. Mar. 7, 2012)......................21, 22

v

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*People for the Am. Way Found. v. U.S. Dep't of Justice*,
   451 F. Supp. 2d 6 (D.D.C. 2006)................................................................42, 46

*Polansky v. Regan*,
   427 N.Y.S.2d 161 (Sup. Ct. 1980)....................................................................29

*Posadas v. Nat'l City Bank*,
   296 U.S. 497 (1936)...........................................................................................20

*Radzanower v. Touche Ross & Co.*,
   426 U.S. 148 (1976)...........................................................................................20

*Reporters Comm. for Freedom of the Press v. U.S. Dep't of Justice*,
   816 F.2d 730 (D.C. Cir. 1987), *rev'd on other grounds by*
   489 U.S. 749 (1989)...........................................................................................19

*Robinson v. Shell Oil Co.*,
   519 U.S. 337 (1997)...........................................................................................26

*Schladetsch v. U.S. Dep't of Hous. & Urban Dev.*,
   No. 99-0175, 2000 WL 33372125 (D.D.C. April. 4, 2000)...................42, 43, 46

*Smith v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*,
   No. 13-13079, 2014 WL 3565634 (E.D. Mich. July 18, 2014) ..................21, 22

*Thompson Publ'g Grp. v. Health Care Fin. Admin.*,
   No. 92-2431-LFO, 1994 WL 116141 (D.D.C. Mar. 15, 1994)...................44, 45

*Union Oil Co. of Cal. v. Fed. Power Comm'n*,
   542 F.2d 1036 (9th Cir. 1976) ..........................................................................28

*Watkins v. ATF*,
   No. 04-800, 2005 WL 2334277 (D.D.C. Sept. 1, 2005) ....................................10

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

**Statutes**

5 U.S.C. § 552(a), et seq. ....................................................................7, 12, 42, 48

5 U.S.C. § 552(b) ...............................................................................*passim*

5 U.S.C. § 552(e)(3) ...........................................................................43

5 U.S.C. § 552(f)(2)(A) ......................................................................42

5 U.S.C. §§ 701–706 ..........................................................................7

28 U.S.C. § 1291 .................................................................................7

28 U.S.C. § 1331 .................................................................................7

28 U.S.C. § 1436 .................................................................................7

Consolidated and Further Continuing Appropriations Act of 2012,
   Pub. L. No. 112–55, 125 Stat. 552 (2011)....................................*passim*

Consolidated Appropriations Act, 2005,
   Pub. L. No. 108–447, Stat. 2809 (2004)........................................11

Consolidated Appropriations Act, 2008,
   Pub. L. No. 110–161, 121 Stat. 1844 (2007)................................10, 33

Consolidated Appropriations Act, 2010,
   Pub. L. No. 111–117, 123 Stat. 3034 (2009)................................11, 19

Consolidated Appropriations Resolution,
   2003, February 20, 2003, 117 Stat. 11..........................................2

Electronic Freedom of Information Act Amendments of 1996......................*passim*

Freedom of Information Act (FOIA)................................................*passim*

National Defense Authorization Act ...............................................19, 32

OPEN Freedom of Information Act of 2009 ....................................*passim*

vii

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**Regulations**

28 C.F.R. § 16.5(d)(1)(iv) ........................................................................... 12

**Rules**

Federal Rule of Appellate Procedure 3(a) ....................................................... 7

Federal Rule of Appellate Procedure 4(a)(1)(A) ............................................. 7

**Legislative Materials**

H.R. Conf. Rep. 108-10, 108th Congress 1st Session (2003) .................................. 2

H.R. Rep. No. 104-795, 104th Congress, 2d Sess. 11 (1996) ......................... 43, 46

H.R. Rep. No. 107-575, 107th Congress 2d Sess. 20 (2002) ................................ 31

H.R. Rep. No. 110-240, 110th Congress 1st Sess. 63 (2007) .......................... 31, 34

H.R. Rep. No. 576, 108th Cong., 2d Sess. 30 (2004)
(House Report to the 2005 Appropriations Act) ......................................... 10, 16

**Other Authorities**

*Aggregate*, *Oxford Living Dictionary: English*,
https://en.oxforddictionaries.com/definition/aggregate
(last visited Mar. 12, 2019) ................................................................. 27

Culberson, B-3115410, 2008, 1 (Comp. Gen. Jul. 15, 2008) ............................... 34

*Data*, *The American Heritage Dictionary* (5th ed. 2012) ................................... 27

*Data*, *Oxford Living Dictionary: English*,
https://en.oxforddictionaries.com/definition/data
(last visited Mar. 12, 2019) ................................................................. 27

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Department of Justice Handbook for Agency Annual Freedom of
Information Act Reports: Guidance for FOIA Professionals on Proper
Tracking and Detailed Instructions for Preparing the Annual Report*,
75–76 (Feb. 16, 2017),
https://www.justice.gov/oip/page/file/160716/download ...................................44

*Jamie A. Grodsky, The Freedom of Information Act in the Electronic Age:
the Statute Is Not User Friendly*, 31 JURIMETRICS J. 17, 26 (1990)...................48

*Merriam-Webster Online Dictionary*, https://www.merriam-
webster.com/dictionary/aggregate (last visited Mar. 12, 2019) .........................27

*Statistics*, *The American Heritage Dictionary* (5th ed. 2012) ................................27

*Statistics*, *Merriam-Webster Online Dictionary*, https://www.merriam-
webster.com/dictionary/statistics (last visited Mar. 21, 2019)...........................27

*Summary of the FOIA Improvement Act of 2016*, U.S. DEP'T OF JUSTICE
(Aug. 17, 2016), https://www.justice.gov/oip/oip-summary-foia-
improvement-act-2016...........................................................................................44

## INTRODUCTION

This case addresses whether the Government may withhold from journalists important statistical aggregate data relevant to the national debate over the role of firearms in society, specifically regarding the use in crimes of guns that had once been the property of law enforcement agencies.  The Center for Investigative Reporting (CIR) sought those records to report on a matter of public interest by filing a request under the Freedom of Information Act (FOIA).  The Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) of the Department of Justice (DOJ) has refused to provide the data on the ground that the Tiahrt Amendment in the Consolidated and Further Continuing Appropriations Act precludes the release under the FOIA.  The district court affirmed that refusal.  This appeal ultimately presents the question of whether those statues authorize the Government to withhold those records.  For the reasons CIR explains below, the Court should reverse the decision below and rule that CIR is entitled to the data it has sought.

At the height of the Cold War, amidst rising concerns over government secrecy Congress enacted FOIA to facilitate public access to government documents and official records to bulwark an informed citizenry.  FOIA requires federal agencies to disclose public records upon a citizen's request unless the information falls within nine specific exemptions from disclosure enumerated under 5 U.S.C. § 552(b).  FOIA Exemption 3, at issue here, provides that an

agency may withhold information if another statute specifically exempts disclosure of the information the request seeks.

Since 2003, in response to an initiative by various private actors, Congress has attached the "Tiahrt Amendment," which prohibits disclosure of government information, to successive appropriations bills for the Department of Justice.  H.R. Conf. Rep. 108-10, 427, 108th Congress 1st Session (2003); Consolidated Appropriations Resolution, 2003, February 20, 2003, 117 Stat. 11, 433 (Joint Resolution).  The current Tiahrt Amendment is in the Consolidated and Further Continuing Appropriations Act of 2012, Pub. L. No. 11255, 125 Stat. 552, 609–10 (2011) (2012 Consolidated Appropriations Act).  The Tiahrt Amendment limits ATF's use of funds to disclose certain types of information about guns in ATF's Firearms Tracing System (FTS) database.  The FTS database contains law enforcement data tracking guns (also known as "trace" data) from their manufacturers or importers, to their retail purchasers, and their possession by law enforcement.  More specifically, the Amendment prohibits disclosure of identifiable trace data for the purpose of protecting privacy interests and not interfering with law enforcement.

This lack of transparency has had deleterious effects.  As multiple gun-related tragedies have sparked public debate over gun control, conversations have ensued without full insight into national firearm trends.  Journalists seeking to

2

report on these trends and contribute to the national discourse often lack the data to do so. It is in this context and in a desire to contribute to the public discourse on a matter of public importance that CIR requested government records pursuant to FOIA from ATF, including those containing statistical aggregate data about the number of guns law enforcement agencies sold back into the marketplace.

Precisely that type of trend data is important for both public debate and oversight of government's role in gun violence. As ATF explains on its website, firearms tracing can "detect interstate, intrastate, and international patterns regarding the sources and types of crime guns." 2ER156 (ATF, *Fact Sheet – eTrace: Internet-Based Firearms Tracing and Analysis* (Mar. 2016)). Still, the agency ignored the request for nine months. After CIR filed the complaint, ATF disclosed some records but still denied access to statistical aggregate data.

Over the past two decades, researchers have agreed that access to statistical aggregate data about guns is paramount to government accountability. *See, e.g.*, 2ER172 (John Diedrich, *Wiped Clean*, MILWAUKEE JOURNAL SENTINEL, Jan. 3, 2010 (quoting former ATF officials and a 2004 Department of Justice Inspector General report on the ATF)); 2ER180 (John Diedrich & Ben Poston, *Ineffective Rules Let Gun Stores Endure*, MILWAUKEE JOURNAL SENTINEL, Dec. 15, 2010 (analyzing ATF data to show how frequently the bureau revokes licenses and issues new licenses for lawbreaking firearms dealers)). Government agencies like

3

the Office of Inspector General of the United States have investigated the sale of weapons to the public by law enforcement agencies. *See, e.g.*, 2ER274–276 (Office of Inspector Gen., *Executive Summary, Audit of the Bureau of Alcohol, Tobacco, Firearms and Explosives Controls Over Weapons, Munitions, and Explosives* (2018)); 2ER278–79 (Jessica Chasmar, *Seattle To Destroy $30K in Used Police Guns So They Don't Get 'Into the Wrong Hands'*, THE WASH. TIMES, June 30, 2016). Similarly, numerous news outlets have reported on the use of former law-enforcement weapons in crimes. *See e.g.*, 2ER281–283 (Greg Moran & Lyndsay Winkley, *ATF Warns Southern California Law Enforcement Officers May Be Illegally Selling Guns*, SAN DIEGO UNION-TRIBUNE, April 12, 2017); 2ER285–290 (Scott Glover, Scott Bronstein & Drew Griffin, *Cop Convicted of Illegal Gun Dealing Sold Weapon Used in Murder*, CNN.COM, May 2, 2018). Public health experts also agree that aggregate data can provide key insights and help promote policies and practices that can reduce gun deaths and crimes. *See, e.g.*, 2ER268–272 (Annie Linskey, *NRA Has Long History of Suppressing Data on Gun Violence*, BOSTON GLOBE, Mar. 25, 2018(discussing the National Center for Injury Prevention and Control and research from the John Hopkins Bloomberg School of Public Health)); *see also* 2ER244–253 (*America's Gun Culture in 10 Charts,* BBC.COM, Nov. 6, 2017 (citing data on suicide by firearm)). Moreover,

access to public records about the involvement of law enforcement weapons in crime is especially important in a functioning civil society.

To justify its refusal to provide the data, ATF cites the current Tiahrt Amendment, within the 2012 Consolidated Appropriations Act. While the Tiahrt Amendment bans ATF's general use of appropriated funds to disclose identifiable gun-trace data from ATF's FTS database, it carves out three discrete categories of information from the broad ban. At the center of this case is the meaning of the third exception, which permits disclosure of "statistical aggregate data," precisely what CIR requested. To the extent of CIR's knowledge, the meaning of this third exception has never been interpreted by the courts.

ATF's reasons for withholding the requested statistical aggregate data are wrong for three reasons. First, as a general matter, the Tiahrt Amendment does fall within Exemption 3 of FOIA because it does not meet the simple requirement under the OPEN FOIA Act of 2009 that the withholding statute must cite to Exemption 3 to qualify for the exemption. Second, and most central to this case, the Tiahrt Amendment's explicit exception permitting disclosure of "statistical aggregate data" makes ATF's refusal groundless. Last, production of the records complies with FOIA's standards and does not demand the creation of a new record. ATF cobbles together a straw-man argument that production of statistical aggregate data from the government's database, which may require redaction,

5

amounts to creation of a new document, which FOIA does not permit. But courts have a long history of addressing virtually the same issue, namely an agency's obligation to produce redacted electronic documents or metadata in its possession. Courts consistently do not find the process of disclosing metadata or redacting an *existing* document as the *creation* of a *new* document.

ATF's arguments thus fail to justify its refusal of CIR's FOIA request. Meanwhile, as the agency blocks access to government records, there is an increasing public demand for examination of the data. Journalists have responded to this public mandate by analyzing what information is available, but ATF's position has limited access to more meaningful public records that could reveal important trends. *See* 2ER244–253; 2ER255–259 (Max Fisher & Josh Keller, *What Explains US. Mass Shootings? International Comparisons Suggest an Answer*, N.Y. TIMES, Nov. 7, 2017). Release of the information CIR requests is essential for journalists to study so that they may inform the public and ensure government accountability.

Because ATF's refusal to provide the data lacks any justification in the law, this Court should reverse the district court's decision and remand with instructions that the district court order ATF to produce all the records CIR requested.

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction over this action and
personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and
552(a)(6)(C)(i).  The district court also had jurisdiction over this action pursuant to
28 U.S.C. §§ 1331 and 1436, and 5 U.S.C. §§ 701–706.

On July 10, 2018, the district court granted in part and denied in part CIR's
motion for summary judgment.  1ER003–019.  On November 13, 2018, pursuant
to the parties' stipulation, the district court dismissed CIR's claims regarding the
adequacy of the searches ATF conducted in response to CIR's FOIA request; it
entered final judgment for ATF and against CIR.  1ER002, 1ER001.  Pursuant to
Fed. R. App. P. 3(a) and 4(a)(1)(A), CIR timely filed a notice of appeal on
December 11, 2018.  2ER020–022.  This Court has jurisdiction to review the
district court's final order and judgment under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

(1) Whether FOIA's Exemption 3 applies to the Tiahrt Amendment, even
though the Tiahrt Amendment does not "specifically cite" FOIA Exemption 3 as
the OPEN FOIA Act of 2009 requires?

(2) Whether ATF properly withheld the records, even though the Tiahrt
Amendment contains an express exception that states ATF "shall not" be
prohibited from releasing "statistical aggregate data"?

7

(3) Whether CIR's request for statistical aggregate data calls for the creation of a new record, even though ATF need only search for and redact an existing document before producing it, release extant metadata, or otherwise produce existing records?

## STATEMENT OF THE CASE

### A.    The Freedom of Information Act

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  Congress enacted FOIA to "facilitate public access to Government documents" by establishing a "judicially enforceable public right to secure such information from possibly unwilling official hands." *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (quotations omitted).

Because the goal of FOIA is to ensure public access to information, the statute contemplates discrete circumstances in which the government may withhold information from the public.  FOIA thus includes nine narrow exemptions that allow the government to withhold materials.  *See generally* 5 U.S.C. § 552(b)(1)–(9); *see also Lahr*, 569 F.3d at 973 (interpreting FOIA's exemptions narrowly "in light of FOIA's purpose of encouraging disclosure").  If a citizen requests

8

information that does not fall within any exemption, the government must release the information to the public. *Robbins Tire & Rubber*, 437 U.S. at 221.

FOIA Exemption 3, at issue in this case, provides that the government may withhold information according to a statute if: (1) it specifically exempts disclosure of the information; (2) it does so "in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding"; *and*, (3) if the statute postdates the OPEN FOIA Act of 2009, it specifically cites to Exemption 3. 5 U.S.C. § 552(b)(3).

**B.      ATF's History of Releasing Trace Data and the Tiahrt Exceptions for Release of Certain Trace Data**

ATF is entrusted with the responsibility of protecting the public from gun violence.  2ER153.  To help fulfill this mission, ATF has long recognized the importance firearm data by collecting and disclosing it.  Since the 1990s, ATF has maintained a massive electronic database of law enforcement records tracing guns used in crimes, the FTS.  *See* 3ER307.  Upon identifying a gun used in crime, law enforcement collects trace data regarding the manufacturer, model, caliber, and serial number of the firearm as well as the location and recipient of the latest transfer.  *Id.*  For many years, ATF released to the public aggregate as well as individual trace data from the FTS database.

In 2003, Congress began restricting certain types of trace information that ATF could release.  That year, Congress first included in the Consolidated

9

Appropriations Act a rider prohibiting ATF from disclosing individual or identifiable firearm trace data in order to protect the privacy of individuals, gun manufacturers and retailers, and law enforcement investigations. *See Muhammad v. U.S. Dep't of Justice*, No. 09-1255, 2007 WL 433552, at *2 (S.D. Ala. Feb. 6, 2007) (citing H.R. Rep. No. 576, 108th Cong., 2d Sess. 30 (2004) (House Report to the 2005 Appropriations Act)); *see also Watkins v. ATF,* No. 04-800, 2005 WL 2334277, at *1 (D.D.C. Sept. 1, 2005) (concluding that with the 2005 Appropriations Act Congress "sought to prevent the public release of sensitive firearms trace data not so much for budgetary reasons than out of concern that such disclosures could jeopardize criminal investigations"). As a result, this rider, known as the Tiahrt Amendment, made individual trace data a government secret. *See* 2ER190–192.

But in 2008, Congress modified the language in new riders to clarify that the Tiahrt Amendment shall not bar ATF from releasing other types of trace information, including "statistical aggregate data."[1] Consolidated Appropriations Act, 2008, Pub. L. No. 110-161, 121 Stat. 1844, 1903–04 (2007) ("2008 Appropriations Act"); *see also* 2ER194–198. Congress has repeatedly included this language in each new enactment of the Tiahrt Amendment in every new

appropriations bill.  *See* Consolidated Appropriations Act, 2010, Pub. L. No. 111-117, 123 Stat. 3034, 3128–29 (2009); *see also* 2ER197 (stating "under the most recent Tiahrt amendment . . . the A.T.F. still cannot release anything but aggregate data to the public").

More specifically, the Tiahrt Amendment states:

during the current fiscal year and in each fiscal year thereafter, no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database . . . *except that this proviso shall not be construed to prevent*: (A) the disclosure of statistical information concerning total production, importation, and exportation by each licensed importer . . . and licensed manufacturer . . . ; (B) the sharing or exchange of such information among and between Federal, State, local, or foreign law enforcement agencies, Federal, State, or local prosecutors, and Federal national security, intelligence, or counterterrorism officials; or … (C) the publication of annual statistical reports on products regulated by the Bureau of Alcohol, Tobacco, Firearms and Explosives, including total production, importation, and exportation by each licensed importer (as so defined) and licensed manufacturer (as so defined), *or statistical aggregate data regarding firearms traffickers and trafficking channels, or firearms misuse, felons, and trafficking investigations.*

125 Stat. at 609–610 (emphasis added).  Thus, the Tiahrt Amendment precludes appropriation of funds "to disclose part or all of the contents of the" FTS database but carves out three categories of information that "shall not" be prevented from release: (A) statistical information concerning total production, importation, and

---

[1] The language of the statute never explicitly prohibited ATF from releasing statistical or aggregate trace data, *see, e.g.*, Consolidated Appropriations Act, 2005, Pub. L. No. 108-447, 118 Stat. 2809, 2859–60 (2004) ("2005 Appropriations

exportation of firearms; (B) information exchanged between various law enforcement agencies; or (C) statistical reports *or statistical aggregate data* regarding firearms (Tiahrt exceptions). *Id*. The third category, exception (C), is at issue in this case.

### C.     CIR's Freedom of Information Act Request

CIR began to investigate the rules limiting access to gun data due to its interest in reporting on gun violence involving guns previously in law enforcement ownership or possession. On March 23, 2017, the reporter Alain Stephens, on behalf of CIR, submitted a FOIA request to ATF seeking trace information carved out from the prohibition in the Tiahrt Amendment. 3ER324. CIR based the request on the precise language of exception (C) in the Tiahrt Amendment, seeking the "[t]otal number of weapons traced back to former law enforcement ownership, annually from 2006 to the present." 3ER328. CIR then sought expedited processing of the request pursuant to 5 U.S.C. § 552(a)(6)(E)(v)(II) and 28 C.F.R. § 16.5(d)(1)(iv), asserting that the disclosure was in the public interest. 3ER329. CIR also sought a fee waiver, pursuant to 5 U.S.C. § 552(a)(4)(A)(ii) and (iii); 28 C.F.R. § 16.5(d)(1)(iv), as a representative of news media. *Id*.

CIR sent an email to ATF on May 24, 2017 to confirm receipt of the Request. 3ER331. On May 26, 2017 ATF acknowledged receipt of the request but

---

Act"), but the 2008 version clarified the previously implicit exception.

stated it had not yet opened it. 3ER333. Over the next six months, CIR repeatedly

contacted ATF but received no determination despite CIR's efforts to discuss any

of ATF's plausible concerns about the request. 3ER325. On November 13, 2017,

after exhausting all administrative remedies, CIR sued for immediate processing

and release of all records responsive to its FOIA request. 3ER318–326.

### D. ATF's Denial of Access and the District Court Proceedings

After CIR sued, ATF began processing the request. ATF provided interim

responses to CIR on January 31 and February 2, 2018, which included disclosure

of partial aggregate trace data in the form of an existing spreadsheet with redacted

columns. 3ER311; 2ER299–301. Although ATF produced some aggregate trace

data, it claimed it would not search the FTS database to produce a complete list of

aggregate data with appropriate redactions because of the Tiahrt Amendment. *See*

2ER265–266. The parties stipulated to submit their dispute to the Court. 3ER314–

317. On April 26, 2018, ATF filed a motion for summary judgment and on May

24, 2018, CIR filed an opposition and cross-motion for summary judgment.

3ER345. In the briefing on the parties' motions, CIR argued that ATF failed to

conduct a search of the FTS database for aggregate data reflecting the total number

of firearms traced back to law enforcement ownership since 2003. 1ER007. CIR

also argued that ATF conducted an inadequate search for copies of law

enforcement communications regarding former weapons involved in E-Trace. *Id.*

13

On July 10, 2018, the district court granted in part and denied in part ATF's motion for summary judgment that its response to CIR's FOIA request was adequate. 1ER019. The court declined to compel ATF to produce what the court deemed non-statistical aggregate data from the FTS database. *Id.* In doing so, the Court determined that the Tiahrt Amendment falls within FOIA's Exemption 3 and could therefore justify withholding documents, despite failing to meet the basic requirement of explicitly citing to Exemption 3. 1ER015. The court provided no legal reasoning to explain its conclusion, stating summarily that it "adopt[ed] the holding of the majority of courts that have addressed this exact argument." 1ER014–015. Additionally, the court held that, while CIR had requested statistical aggregate data, production still "requires a compilation of data points . . . and seeks information that does not currently exist." 1ER017. Finally, the court held that ATF failed to prove as a matter of law that it had conducted a reasonable search outside the FTS database for documents responsive to CIR's requests for aggregate data and law enforcement communications. 1ER010.[2]

The parties stipulated to dismiss CIR's remaining claims regarding the search for documents outside the FTS database, and the district court granted the stipulation and entered judgment. 2ER023–027; 1ER002. No claims remain pending in the district court.

---

[2] On appeal, CIR does not challenge, and ATF does not raise, the district court's

14

## SUMMARY OF THE ARGUMENT

For three reasons, ATF cannot withhold the statistical aggregate gun trace data that CIR seeks.

First, the Tiahrt Amendment does not justify ATF's withholding of records because it does not explicitly invoke Exemption 3 of FOIA, as it must do to fall within Exemption 3 under the OPEN FOIA Act of 2009, 5 U.S.C. § 552(b)(3)(B).

Second, even if the Tiahrt Amendment were to qualify as an Exemption 3 statute, it explicitly permits disclosure of the type of information CIR requested. Congress expressly stated that the Tiahrt Amendment "shall not" prohibit disclosure of "statistical aggregate data" related to "firearms misuse." 125 Stat. at 610, at exception (C). ATF already has the codes required to release the requested data.[3] ATF has previously disclosed precisely the types of records requested in other agency cases and justified disclosure by citing to exception (C). Moreover, ATF's suggestion that disclosure would evade the Tiahrt Amendment's purpose is wrong. The twin aims of the Tiahrt Amendment are (a) to protect privacy and (b) to insulate from public view data that would interfere with specific law

---

ruling on this issue.

[3] The government represented in briefing that "it is NTC policy to close routine priority traces with the 'S5' close-out code in the Firearm Trace System database, indicating 'THIS FIREARM WAS TRACED TO A GOVERNMENT AND/OR LAW ENFORCEMENT AGENCY.' [and that] . . . There are three additional close-out codes in the Firearm Trace System database (S6, SH, DN) that indicate a firearm was traced to a law enforcement." 3ER303–304.

enforcement investigations. *See Muhammad*, 2007 WL 433552, at *2 (citing H.R. Rep. No. 576, 108th Cong., 2d Sess. 30 (2004) (House Report to the 2005 Appropriations Act)). Aggregate data accommodates both of these concerns by not containing any personal identifying information that could jeopardize a person's privacy or stymie law enforcement investigations.

Third, ATF's argument that disclosure of statistical aggregate data from an existing database would create a *new* record fails because it ignores the Electronic Freedom of Information Act Amendments of 1996 ("E-FOIA Amendments"), Pub. L. No. 104-231, 110 Stat. 3048 (1996), and ignores countless cases where databases have been searched and redacted before production.

## STANDARD OF REVIEW

Summary judgment decisions in FOIA cases have *de novo* review. *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 990 (9th Cir. 2016) (en banc) (per curiam). On appellate review, the Court therefore applies the same summary judgment standard as the district court. *Id.* at 988.

## ARGUMENT

I. **THE TIAHRT AMENDMENT WITHIN THE 2012 CONSOLIDATED APPROPRIATIONS ACT DOES NOT QUALIFY UNDER FOIA EXEMPTION 3 AS A BASIS OF WITHHOLDING INFORMATION FROM CIR'S FOIA REQUEST.**

The district court erred in allowing the ATF to invoke Exemption 3 because the 2012 Consolidated Appropriations Act does not qualify as a withholding

16

statute. The OPEN FOIA Act of 2009 amended Exemption 3 of the FOIA to require that any statute enacted after October 28, 2009 must "specifically cite" to Exemption 3 to justify as a withholding statute. 5 U.S.C. § 552(b)(3)(B). The 2012 Consolidated Appropriations Act, which is the most recent and operative iteration, does not meet this fundamental requirement. Because the 2012 Consolidated Appropriations Act wholly replaced and therefore repealed the earlier versions of the Consolidated Appropriations Act in earlier appropriations acts, ATF cannot rely upon obsolete instances of former Tiahrt Amendments to meet the requirement. To the extent district courts have reached contrary conclusions, the decisions are incorrect; moreover, those decisions, which sought individual data, not statistical aggregate data, are factually distinguishable. Finally, because the 2012 Consolidated Appropriations Act authorizes discretionary decisions by ATF in applying the exceptions to the Tiahrt Amendment, it cannot qualify as a FOIA Exemption 3 statute. For all these reasons, the Court should therefore reverse the district court's ruling on the application of the Tiahrt Amendment.

### A. Congress Enacted the Current and Operative 2012 Consolidated Appropriations Act After Enactment of the OPEN FOIA Act of 2009.

FOIA Exemption 3 exempts from disclosure records when they are:

specifically exempted from disclosure by statute . . . , if that statute (A) (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of

17

matters to be withheld; and (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009 [Oct. 28, 2009], specifically cites to this paragraph.

5 U.S.C. § 552(b)(3).  Whether Exemption 3 precludes disclosure of information involves a two-part inquiry.  *Carlson v. U.S. Postal Serv.*, 504 F.3d 1123, 1127 (9th Cir. 2007).  First, courts "determine whether the withholding statute meets the requirements of Exemption 3."  *Id.*  Second, courts "determine whether the requested information falls within the scope of the withholding statute."  *Id.* Contrary to the district court's ruling, the Tiahrt Amendment within the 2012 Consolidated Appropriations Act fails to meet the requirements of Exemption 3.[4]

### B. The 2012 Consolidated Appropriations Act Does Not Include the Specific Citation to Exemption 3 in Its Tiahrt Amendment Language as Required by OPEN FOIA Act of 2009.

The OPEN FOIA Act of 2009 amended Exemption 3 to provide that Exemption 3 will apply to a statute enacted after October 28, 2009 only if the statute "specifically cites to" Exemption 3, specifically 5 U.S.C. § 552(b)(3)(B).

Congress had ample opportunity to change wording of the Tiahrt Amendment in new instances of the Consolidated Appropriations Act to include specific citations to § 552(b)(3)(B), but it failed to do so.  Congress passed both the 2010 and 2012 Consolidated Appropriations Acts after enactment of the OPEN

---

[4] As CIR explains below at 25-41, even if the 2012 Consolidated Appropriations Act did meet the requirements of Exemption 3, the information CIR requests falls squarely within an exception to the rider and is therefore subject to disclosure.

FOIA Act of 2009 without altering new instances of the Tiahrt Amendment to include a reference to Exemption 3.  *See* Pub. L. No. 112-55, 125 Stat. at 610; Consolidated Appropriations Act, 2010, Pub. L. No. 111-117, 123 Stat. 3034, 3128–29 (2009).  In contrast, just one month after the enactment of the 2012 Consolidated Appropriations Act, Congress enacted the National Defense Authorization Act for Fiscal Year 2012, which included a specific citation to Exemption 3, 5 U.S.C. §552(b)(3)(B).  *See* National Defense Authorization Act for Fiscal Year 2012, Pub. L. No. 112-81, 125 Stat 1298, 1600–01, 1604 (2011). Thus, by its plain language and in contrast to other legislation, the 2012 Consolidated Appropriations Act is not a withholding statute for purposes of Exemption 3.  *Reporters Comm. for Freedom of the Press v. U.S. Dep't of Justice*, 816 F.2d 730, 735 (D.C. Cir. 1987) (a statute's actual words determine the applicability of Exemption 3 to it), *rev'd on other grounds by* 489 U.S. 749 (1989). While this alone suffices, there are additional reasons not to apply the Tiahrt Amendment.

### C. Only the 2012 Consolidated Appropriations Act Governs CIR's FOIA Request and It Permits Disclosure of the Records CIR Seeks.

ATF cannot rely on prior iterations of the Tiahrt Amendment in earlier appropriations acts, which were obsolete and no longer law at the time of CIR's request, in order to satisfy the requirement of a statutory citation to Exemption 3.

In granting summary judgment to ATF on this issue, the district court relied on cursory rulings from nonbinding sister courts. It held that "disclosure prohibitions set forth by Congress in the 2005 and 2008 [versions of the Tiahrt Amendment] are still effective prospectively and beyond those fiscal years as a permanent prohibition, until such time as Congress expresses the intent to repeal or modify them." 1ER014–015 (internal quotation marks and citation omitted). The ruling is wrong because the 2012 Consolidated Appropriations Act wholly replaced earlier versions of the statute and the cases the lower court cited are distinguishable.

American courts have a well-settled rule that, if "a later act [by Congress] covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act." *In re Glacier Bay*, 944 F.2d 577, 581 (9th Cir. 1991) (quoting *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154 (1976), in turn quoting *Posadas v. Nat'l City Bank*, 296 U.S. 497, 503 (1936)). The 2012 Tiahrt Amendment entirely restates the relevant portions of the 2008 and 2010 versions. *Compare* 125 Stat. at 610, *with* 123 Stat. at 3128–29, *and* 121 Stat. at 1903–04. Congress cannot have intended that all three iterations of the Tiahrt Amendment would remain in effect where the latest iteration, the 2012 Tiahrt Amendment, "covers the whole subject matter of the earlier one[s]." *See in re Glacier Bay*, 944 F.2d at 577. Instead, Congress clearly intended the iteration of the Tiahrt Amendment in the 2012 Consolidated Appropriations Act as a substitute

for, and replacement of, earlier iterations—and failed to make it a withholding statute. *See id.*

This Court should also decline to follow the cases holding that previous iterations of the Tiahrt Amendment "are still effective prospectively." 1ER015 (quoting *Abdeljabbar v. Bureau of Alcohol, Tobacco & Firearms*, 74 F. Supp. 3d 158, 175–76 (D.D.C. 2014)). Those decisions do not bind this Court, they lack any reasoning to support their conclusions, and they have no persuasive insight. First, nearly all the cases the district court relied on lacked analysis regarding whether the earlier iterations of the Tiahrt Amendment negate the requirement that the 2012 Consolidated Appropriation Act's version of the Tiahrt Amendment "specifically cite" to Exemption 3.

For example, in *Fowlkes v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 139 F. Supp. 3d 287, 292 (D.D.C. 2015), *Smith v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, No. 13-13079, 2014 WL 3565634, at *6 (E.D. Mich. July 18, 2014), and *Penn v. U.S. Dep't of Justice*, No. S-10-2494, 2012 WL 761741, at *6 n.3 (E.D. Cal. Mar. 7, 2012), the courts failed to analyze whether the earlier instances of the Amendment remain in effect; instead, they cited to earlier decisions without independent analysis.[5] Similarly, in *Caruso v. U.S. Bureau of Alcohol, Tobacco & Firearms*, 495 Fed. App'x. 776 (9th Cir. 2012), an

unpublished decision of this Court, the Court held that ATF correctly relied on the Appropriation Act of 2010 as barring disclosure under Exemption 3, without analysis of the effect of the 2012 Consolidated Appropriations Act. The district court here followed suit by providing no independent analysis and merely choosing to "adopt[] the holding of the majority of courts that have addressed this exact argument." *See* 1ER014–015.

*Abdeljabbar* is the only case the district court cited that analyzes applicability of Exemption 3 to the 2012 Tiahrt Amendment. 74 F. Supp. 3d 158. The *Abdeljabbar* court concluded that the earlier versions of the Tiahrt Amendment were not subject to repeal by implication simply because that type of repeal is "not favored." *Id.* at 175. But that decision overlooks the line of cases establishing that repeal by implication *is* appropriate where later versions of an act cover, and substitute for, earlier versions. *See In re Glacier*, 944 F.2d at 581. As CIR established above, repeal by implication is appropriate here.

Finally, all the cases on which the district court relied are factually distinguishable because they concern requests for *individual* firearm trace data. *Abdeljabbar*, 74 F. Supp. 3d 158 (pro se plaintiff seeking records related to criminal cases brought against him); *Fowlkes*, 139 F. Supp. 3d 287 (same); *Smith*, 2014 WL 3565634 (same); *Penn*, 2012 WL 761741 (same); *Caruso v. U.S. Bureau*

---

[5] The absence of further analysis may reflect that all plaintiffs in those cases acted

*of Alcohol, Tobacco & Firearms*, 495 Fed. Appx. 776 (9th Cir. 2012) (plaintiff sought records relating to business he previously owned).  Here, by contract CIR seeks "statistical aggregate data," one of the three exceptions in the Tiahrt Amendment.  *See* 25–42 below.

The Court should correct the string of poorly reasoned cases, reverse the district court, and rule that simple rules of statutory interpretation compel a holding that the 2012 Tiahrt Amendment does not qualify as a withholding statute because it does not specifically cite Exemption 3.

### D. Because the 2012 Consolidated Appropriations Act Affords Agency Discretion in the Tiahrt Amendment, as ATF Has Shown by Its Varying Interpretations of the Rider, It Cannot Qualify as a Withholding Statute.

FOIA expressly states that, to qualify as a withholding statute, a statute must "leave no discretion" or "establish[] particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. §§ 552(b)(3)(A)(i)–(ii).  The district court concluded that the Tiahrt exceptions "provide specific criteria allowing for the release of certain categories of information."  1ER014.  But the conclusion overlooks the fact that, in "allowing for the release of certain categories of information," the statute still affords the ATF too much discretion in assessing *what* information does and does not fall within those categories.  Specifically, while permitting release of "statistical aggregate data," the Tiahrt Amendment does

---

pro se.

23

not define that phrase, opening the possibility for ATF's varying interpretations and uneven application of the statute. *See* 25–42 below. The district court improperly discounted the discretionary nature of this language.

ATF's discretion regarding what information it produces under the Tiahrt exceptions is evident by comparing what it deems "statistical aggregate data" in other cases and in this case. As CIR sets forth at 35–42 below, in defending against a series of suits under the Administrative Procedure Act, ATF filed records with the court (nearly identical in nature to those requested here) and justified this disclosure by stating they fell under the "statistical aggregate data" exception of the Tiahrt Amendment. 2ER218–239. The records included what appeared to be queries from the FTS database with redactions of the names of individual firearms dealers. *See* 2ER231–239. In a footnote in its briefs, ATF argued that disclosure was permitted because the materials constituted "statistical aggregate data regarding firearms traffickers and trafficking channels," thus construing "statistical aggregate data" to include that production of records. 2ER223, n.2; 2ER229, n.2. In contrast, here, the ATF has construed "statistical aggregate data" in a contrary way to exclude the information CIR seeks. These conflicting outcomes illustrate ATF's discretion in applying the Tiahrt Amendment and further compel the conclusion that the 2012 Consolidated Appropriations Act iteration of the Tiahrt Amendment fails to meet the requirements of section 552(b)(3)(A)(i)–(ii).

24

ATF cannot meet its burden of showing that the 2012 Tiahrt Amendment is a withholding statute for Exemption 3 purposes, and it may not circumvent the clear requirements Congress has established for a statute to fall within Exemption 3. The Court should therefore reverse the district court's ruling and hold that the Tiahrt Amendment is not a withholding statute.

## II. THE INFORMATION CIR SEEKS IS "STATISTICAL AGGREGATE DATA" UNDER EXCEPTION (C) OF THE TIAHRT AMENDMENT.

The district court improperly discounted how plain language, legislative history, and ATF's prior data production all confirm that the Tiahrt Amendment permits disclosure of the data CIR seeks. Exception (C) of the Tiahrt Amendment provides that the statute "shall not" bar disclosure of "statistical aggregate data" regarding firearms trafficking and investigations. Pub. L. No. 112-55, 125 Stat. 552, 609–10 (2011). CIR seeks the "total number of weapons traced back to former law enforcement ownership, annually from 2006 to the present." 3ER328. This is a request, simply stated, for statistical aggregate data.

ATF can and should furnish this information in response to CIR's request. The plain meaning of the phrase "statistical aggregate data" includes the information CIR requests. Legislative history confirms this unambiguous interpretation. Most importantly, ATF has disclosed the type of data CIR seeks under the authority of exception (C).

On multiple occasions, ATF has previously produced similar records it referred to as "statistical aggregate data." *See* 1ER017–018. ATF has produced this data in various formats, including tables aggregated by state, redacted tables aggregated by firearms dealer, and redacted tables without any numbers aggregated. This reflects how a broad range of data formats falls under the definition of "statistical aggregate data" and thus would be responsive to CIR's request. The Court should reverse the district court's ruling on the construction of the Tiahrt Amendment.

### A. The Phrase "Statistical Aggregate Data" Has a Broad and Plain Meaning That Includes the Records Sought by CIR.

"Statistical aggregate data" as a phrase uses broad but meaningful and intelligible terms, which can encompass different formats of data and different types of aggregation. When interpreting a statute, the court "start[s] with the plain meaning of the statute's text." *Hunsaker v. United States*, 902 F.3d 963, 967 (9th Cir. 2018) (quoting *In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 432–33 (9th Cir. 2011)). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). Questions of legal analysis and statutory interpretation are reviewed *de novo. See La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir.

26

2010).  When a statute does not define a term, a court may begin by examining its "ordinary, dictionary meaning."  *In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d at 432.

The broad dictionary definitions of "statistical" "aggregate" and "data," suggests that many different formats of data would qualify under the combination of these words.  Dictionaries define "statistical" as relating to, "statistics" or "the mathematics of the collection, organization, and interpretation of numerical data" or simply "numerical data."  *Statistics*, *The American Heritage Dictionary* (5th ed. 2012); *Statistics*, *Merriam-Webster Online Dictionary*, https://www.merriam-webster.com/dictionary/statistics (last visited Mar. 21, 2019) (defining it simply as "a collection of quantitative data.").  "Aggregate" is defined as "formed by the collection of units or particles into a body, mass, or amount."  *Aggregate* (adj.), *Merriam-Webster Online Dictionary*, https://www.merriam-webster.com/dictionary/aggregate (last visited Mar. 12, 2019); *see also Aggregate*, *Oxford Living Dictionary: English*, https://en.oxforddictionaries.com/definition/aggregate (last visited Mar. 12, 2019) (defining "aggregate" as "formed or calculated by the combination of several separate elements; total.")  And the American Heritage dictionary defines "data" as "facts that can be used to gain knowledge or make decisions; information."  *Data*, *The American Heritage Dictionary* (5th ed. 2012); *cf. Data*,

27

*Oxford Living Dictionary: English*,

https://en.oxforddictionaries.com/definition/data (last visited Mar. 12, 2019)

(defining it as "Facts and statistics collected together for reference or analysis").

The plain meaning for each broad term here informs the even broader meaning of

the phrase "statistical aggregate data." Courts must assume the legislature "says in

a statute what it means and means in a statute what it says there." *Conn. Nat'l*

*Bank v. Germain,* 503 U.S. 249, 253–54 (1992).

Additionally, while CIR is aware of no case law interpreting the meaning of

"statistical aggregate data" within exception (C) of the Tiahrt Amendment or any

statutes using the precise phrase "statistical aggregate data," courts have

interpreted similar phrases broadly. Courts often consider interpretation of similar

language to deduce the meaning of a statute. *See F.A.A. v. Cooper*, 566 U.S. 284,

291–94 (2012) (analyzing variations of the meaning of "actual damages" for

different causes of action). For instance, several courts have conferred onto

"statistical data" or "aggregate data" their broad plain meaning, *i.e.* some type of

collected, nonidentifiable information. *See, e.g.*, *Union Oil Co. of Cal. v. Fed.*

*Power Comm'n*, 542 F.2d 1036, 1045 (9th Cir. 1976) (noting that "aggregate data

which do not identify individual producers or specific reserve information of

individual producers" could respond to the public's need for information without

compromising trade secrets); *Klimas v. Comcast Cable Commc'ns, Inc.*, 465 F.3d

271, 275 (6th Cir. 2006) (interpreting "aggregate data" in opposition to "identifiable information" in the Cable Communications Policy Act of 1984); *Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137, 157–58 (N.D. Cal. 2004) (referring to aggregate data as "pooled" data and discussing how "statistical results may be presented at various levels of generality or specificity" in aggregate data.); *Polansky v. Regan*, 427 N.Y.S.2d 161, 162–63 (Sup. Ct. 1980) (interpreting "statistical or factual tabulations or data" in New York's Freedom of Information Law to mean "facts and figures" that need not be "objective"). These cases strongly weigh in favor of this Court assigning "statistical aggregate data" with a similarly plain definition as nonidentifiable information culled from multiple sources.

The district court seemed to accept as a given that CIR sought statistical aggregate data, but nevertheless it found reason for ATF to withhold records. Throughout its decision, the court referred to CIR's FOIA request as a request for "statistical aggregate data":

- "Plaintiff asserts that ATF's search for the third category of records sought—statistical aggregate data reflecting the total number of firearms traced back to law enforcement ownership since 2006—was inadequate . . ." 1ER007.

- "Plaintiff's FOIA request, however, does not seek individual records contained in the FTS database, but instead seeks statistical aggregate data . . ." 1ER017.

The district court then, without reason stated, "[a] crucial distinction exists, however, between the statistical aggregate data released by the ATF as part of the agency administrative records in the APA cases cited by Plaintiff, and the statistical aggregate data sought here." 1ER016. The court paraphrases CIR's requests as "a statistical summary or listing of a particular subset of data points . . . derived from or contained within the FTS database." 1ER017. On the same page, the court then asserted that CIR's request required "a compilation of data points." *Id.*

Regardless, the broad meaning of "statistical aggregate data" ensures that the phrase encompasses a broad range of data formats, including those that government bodies often release under FOIA. Responsive data could come from millions of data points or a mere handful of data points. It appears ATF could aggregate by anonymized dealer on a single day or for all dealers nationwide over the last ten years. It could disclose the mere statistical aggregate number of firearms or a spreadsheet with a column redacting the identifying trace number. Indeed, ATF has produced statistical aggregate data in various forms at various levels of generality and multiple instances. *See* 35–41 below. CIR does not

request any single format; but simply any format of statistical aggregate data responsive to its request.[6]  However, CIR contends that, according to the law and ATF's definition, all formats previously released by ATF should be disclosable.

### B.     Although the Statutory Text Is Clear, Legislative History Also Supports CIR's Interpretation.

"[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there."  *Conn. Nat'l Bank,* 503 U.S. at 253–54. Legislative history can confirm the plain meaning of a statute and dispel any suggestion that the language is ambiguous.  *See Milavetz, Gallop & Milavetz, P. A. v. United States*, 559 U.S. 229, 236 n.3 (2010).  Here, legislative history of the Tiahrt Amendment reinforces the plain meaning by reflecting that Congress added the term "statistical aggregate data" specifically to authorize the release of the kind of information requested here.  *See* H.R. Rep. No. 110-240, 110th Congress 1st Sess. 63 (2007).  At its inception, the purpose of the Tiahrt Amendment was to shield some trace data to protect personal privacy and not to "jeopardize[e] criminal investigations and officer safety."  H.R. Rep. No. 107–575, 107th Congress 2d Sess. 20 (2002).  Congress the added the exceptions in 2008.

---

[6] After framing CIR's request as statistical aggregate data, the district court seemingly contradicted itself and stated that CIR only sought aggregate data. 1ER018.  The district court came to this contrary conclusion by conflating statutory interpretation with analysis on production of a new record.  *Id.*  CIR contends that statutory interpretation and creation of a new record should be two separate steps in the court's analysis.

To permit greater access without disturbing the purpose of the statute, in 2008 Congress added three specific exceptions, including statistical aggregate data, to permit greater data access. Pub. L. No. 112-55, 125 Stat. 609 (2011). Unlike individualized data, statistical aggregate data, like the data CIR has requested, does not frustrate the purposes of the statute.

Some examples of the type of data ATF had released before the passage of the Tiahrt Amendment are instructive because they portray the granularity of data that Congress wished to shield from disclosure by including the rider. For example, concerns arose over publishing individual trace data that could have endangered an investigation and an officer by its identifying nature. *See* 2ER165–167 (David Olinger, *Police guns in the hands of criminals*, THE DENVER POST, Sept. 20, 1999). Similarly, data naming individual retail sellers of guns caused concern. *See* 2ER169–176 (John Diedrich, *Wiped Clean*, MILWAUKEE JOURNAL SENTINEL, Jan. 3, 2010). This particularized information was the type of disclosure Tiahrt sought to prevent. *See* 2ER191–192 (James V. Grimaldi & Sari Horowitz, *Industry Pressure Hides Gun Traces, Protects Dealers from Public Scrutiny*, WASH. POST, Oct. 24, 2010). In contrast, publishing statistical aggregate trace data revealing that police guns were linked to 230 homicides and 253 drug cases in 1994, did not pose the same risk to ongoing investigations and officer safety. *See*

2ER165–167.  Instead, it merely revealed a trend that could be useful in informing public policy.

Moreover, in 2007, public outcry surrounding gun violence persuaded Congress to revise the Tiahrt Amendment to provide further access to certain trace data in the interest of public safety.  In response to advocacy led by a coalition of mayors, Congress updated the Tiahrt Amendment to explicitly permit ATF to disclose "statistical aggregate data" for public safety purposes.  *See* 2ER155–163 (William J. Krouse, CONG. RESEARCH SERV., RS22458, *Gun Control: Statutory Disclosure Limitations on ATF Firearms Trace Data and Multiple Handgun Sales Reports* (May 27, 2009); *see also* Pub. L. No. 110-161, 121 Stat. at 1904.  In his April 26, 2007 statement to the Appropriations Committee, Paul Helmke of the Brady Center to Prevent Gun Violence provided examples of previously released ATF crime gun trace data that were important to public safety.  2ER296–297 (*Hearing on Restrictions Imposed on the Bureau of Alcohol, Tobacco, Firearms and Explosives Concerning the Release of Crime Gun Trace Data*, 110th Cong. 413 (2007)).  This included an example of statistical aggregate data, *i.e.* that over 60 percent of crime guns were traced back to one percent of licensed gun dealers. *Id.*  Congress responded with the Tiahrt exceptions.  The Congressional Report explained Congress's motivation in adding exception (C):

> At the same time, the Committee is concerned that the previous year's
> language has been interpreted to prevent publication of a long-running

33

> series of statistical reports on products regulated by ATF. This was never the intention of the Committee, and the fiscal year 2008 language makes clear that those reports may continue to be published in their usual form as they pose none of the concerns associated with law enforcement sensitive information. Within the funds provided, the Committee expects that ATF will use up to $1,000,000 to produce these statistical reports.

H.R. Rep. No. 110-240, at 63. The report further highlighted Congress's aim to protect individualized data, specifically excluding retrieval of information by name or personal identification code. *Id.*

In contrast to the 2006 Tiahrt Amendment, which barred disclosure of "part or all of the contents of the Firearms Trace System database to anyone other than" law enforcement, the 2008 Tiahrt Amendment carved out exceptions. Culberson, B-3115410, 2008, 1 (Comp. Gen. Jul. 15, 2008). "[T]he 2008 proviso states that ATF may publish statistical aggregate data regarding firearms traffickers and trafficking channels, or firearms misuse, felons, and trafficking investigations." *Id.* at 2. (quotation omitted).

This legislative history reveals how Congress liberalized the Tiahrt Amendment to permit production of "statistical aggregate data" for the public good and at the same time continued to limit publication of individualized gun trace data. These changes further inform the current interpretation of exception (C).

### C.    ATF Has Previously Published the Type of Statistical Aggregate Data CIR Seeks.

The district court failed to take appropriate account of ATF's own productions in earlier settings, which provide useful guidance on the meaning of "statistical aggregate data" and compel disclosure of the data CIR requests here. Multiple formats of data could be responsive to CIR's request for the total number of weapons traced back to former law enforcement ownership, annually from 2006 to the present. ATF can and should furnish responsive records that qualify as "statistical aggregate data," as the agency has previously done. The request does not require ATF to engage in counting or arithmetic.[7]

ATF has previously interpreted exception (C) to permit disclosure of statistical aggregate data to private parties, consistent with what CIR seeks here. In a series of suits against ATF under the Administrative Procedure Act, ATF filed "Administrative Records" with the court. *See* 2ER218–239. Those filings show that ATF produced at least one of the kinds of records CIR requests: queries from the FTS database with names of firearms dealers redacted. Plaintiffs in those cases argued against redaction, but ATF countered that the Tiahrt Amendment justified disclosure with redaction. *See* 2ER223, n.2; 2ER229, n.2. ATF argued that "the unredacted information . . . constitutes '*statistical aggregate data* regarding

35

firearms traffickers and trafficking channels,' 125 Stat. at 610, the disclosure of which is permitted by the statute." *Id.* (emphasis added). Regardless of the motivation behind releasing this information, ATF categorized the information as "statistical aggregate data." *Id.*; *cf.* 1ER014.

ATF's disclosures also show different kinds of formats qualify under exception (C). For instance, the public administrative record in one case reveals yet another format of FTS information that ATF considers "statistical aggregate data." *See* 2ER231–239 (ATF Administrative Record 0388-0696, *Nat'l Shooting Sports Foundation, Inc. v. Melson*, No. 11-cv-01401 (D.D.C. Sept. 12, 2011) (ECF 22-6)). In this document which summarizes trace data on rifles over twenty-two calibers recovered in Mexico between 2008 and 2010, the various redactions show different types of statistical aggregate data.

In another table titled, "FY 2010 Recovery in Mexico excluding duplicates," ATF listed statistical aggregate data in numerical totals. The table lists states in one column and "trace count" in a second column. Texas, for example, had 1998 firearms recovered in Mexico in 2010, while California had 1016. 2ER231.

---

[7] As CIR discusses below at 42–49, contrary to the district court's conclusion, CIR's request for this statistical aggregate data does not require creation of a new record.

| FY2010 Recovery in Mexico excluding duplicates | | | | |
|---|---|---|---|---|
| ANY DEALER where purchaser Identified(incl ZFFL) | | | TYPE 01 Dealer with purchaser Identified | |
| (Trace entry date - recovery date) is less than 366 days | | | | |
| ST | TRC CNT | | ST | TRC CNT |
| TX | 1998 | | TX | 1538 |
| CA | 1016 | | CA | 866 |
| AZ | 783 | | AZ | 635 |
| IL | 181 | | IL | 178 |
| NM | 130 | | NM | 93 |
| FL | 105 | | FL | 75 |
| CO | 92 | | CO | 63 |
| OK | 81 | | OK | 55 |
| NV | 74 | | NV | 48 |
| WA | 57 | | WA | 46 |
| GA | 51 | | KS | 37 |
| NC | 49 | | NC | 35 |
| KS | 46 | | MI | 32 |
| LA | 39 | | OR | 31 |
| OR | 37 | | IN | 30 |
| MI | 35 | | LA | 28 |
| AL | 34 | | AL | 27 |
| IN | 33 | | GA | 25 |
| AR | 30 | | OH | 24 |
| OH | 27 | | AR | 24 |
| MN | 24 | | MN | 22 |

2ER231 (*ATF statistical aggregate data from 11-cv-1401*)

Another table for "Recovery MM, Caliber >22 Retail FFLs", discloses statistical aggregate trace data through redactions as well as numerical totals. 2ER239. The table includes a column for "FFL" (Federal Firearms Licensed dealers), a column for state, and a count column. *Id.* All the rows under "FFL" are redacted. *Id.* The first row lists a redacted dealer, Arizona, and a count of 167. *Id.* The second row lists redacted dealer, Arizona, and a count of 143. *Id.* The third row lists a redacted dealer, Texas, and a count of 133. *Id.* The table also shows forty-three rows, all with counts of recovered firearms from dealers in Arizona, Texas, and California. *Id.* This formatting displays that statistical aggregate data may be a numerical total number of firearms or a table of data (with a redacted column de-identifying all information) that the recipient could use to tally on its own.

37



2ER239 *(ATF statistical aggregate data from 11-cv-1401)*

The Department of Justice also disclosed a in the district court proceedings below that further shows redaction as an appropriate format for disclosure under exception (C). *See* 2ER299–301. The tables feature four redacted columns: "assigned to," "trace number," serial #," and "requestor." *Id.* The redactions shield identifying information and investigative details from disclosure. *Id.* The visible columns include "assigned date," "purchasing law enforcement agency," "completion data" "close-out code," and "remarks." *Id.* ATF has clarified that the close-out code "S5" indicates that the firearm was traced to a government and/or law enforcement agency. 3ER308.

| ASSIGNED DATE | ASSIGNED TO | TRACE NUMBER | SERIAL # | REQUESTOR | PURCHASING LAW ENFORCEMENT AGENCY | COMPLETION DATE | CLOSE-OUT CODE | REMARKS |
|---|---|---|---|---|---|---|---|---|
| 10/1/2013 | | (b) (6), (b) (7)(C) | | (b) (6), (b) (7)(C) | Kings County Human Services | 10/1/2013 | S4 | |
| 10/1/2013 | | | | | Rockford IL PD | 10/1/2013 | S4 | |
| 10/3/2013 | | | | | Pineville LA. PD. | 10/3/2013 | SH | |
| 10/3/2013 | | | | | Port Allen LA. PD. | 10/4/2013 | S4 | |
| 10/3/2013 | | | | | City of Kingsville PD | 10/4/2013 | DN | |
| 10/8/2013 | | | | | Berks County DA Office | 10/10/2013 | Wholesale | |
| 10/9/2013 | | | | | NY Waterfront Commission | 10/15/2013 | S4 | |
| 10/10/2013 | | | | | Baltimore PD | 10/11/2013 | Wholesale | |
| 10/15/2013 | | | | | Indianapolis PD | 10/15/2013 | S4 | |
| 10/16/2013 | | | | | Capitol Police | 10/17/2013 | OBR | |
| 10/21/2013 | | | | | Marta Police Department | 10/29/2013 | SZ | |
| 10/22/2013 | | | | | Alleghany County PD | 10/23/2013 | SS | |
| 10/22/2013 | | | | | Pottawattamie County SO | 10/30/2013 | D5 | |
| 10/28/2013 | | | | | Lafayette AL. PD | 10/29/2013 | S4 | |
| 10/28/2013 | | | | | Marion County SO | 10/31/2013 | S4 | |
| 10/28/2013 | | | | | Colleton County SO | 11/4/2013 | D5 | |
| 11/1/2013 | | | | | Rappahanock County SO | 11/6/2013 | SS | |
| 11/4/2013 | | | | | Union County Prosecutor | 11/4/2013 | OBR | |
| 11/4/2013 | | | | | Montclair PD | 11/4/2013 | OBR | |
| 11/4/2013 | | | | | Ramah PD | 11/5/2013 | S4 | |

2ER253 (*ATF statistical aggregate data from 17-06557*)

By ATF's own earlier assertions and earlier productions, these different formats all constitute "statistical aggregate data" the agency may publish under exception (C).

It is the *nonidentifiable* nature of the data that appears to be the primary factor used to determine what qualifies as "statistical aggregate data." For instance, ATF redacted FFL (Federal Firearms Licensed) names in both the administrative record and in the production for this litigation. *See* 2ER299–301; *see also* 2ER231–239. Some tables featured tallies by state, others featured tallies by dealer, and others included individualized records with identifying information removed. In the produced records, ATF combined tracing information across multiple sources and did not reveal individual information.

CIR intended its request for the "total number of weapons traced back to former law enforcement ownership, annually from 2006 to the present" to fulfill the directive under the statute and to elicit *any format* of statistical aggregate data,

39

just as ATF has produced in other cases. For example, if ATF published a database query that included tallies of weapons traced back to law enforcement officers, that format would match the administrative records ATF filed in *Nat'l Shooting Sports Foundation, Inc. v. Melson*. 2ER185–193. If, instead, ATF produced a query of traces with law enforcement close-out codes and redacted identifying information, this would match what the Department of Justice already produced in the district court proceedings in this case. 2ER299–301.

The district court's approach to CIR's request does not reflect the realities of the data formats that would be permissible in this case. By producing a responsive "statistical summary or listing," to use the district court's words, ATF could give CIR the necessary statistical aggregate data to determine the total number of weapons traced back to former law enforcement ownership, annually from 2006 to the present. *See* 1ER017. It could be in the subtotal format that ATF used in *Nat'l Shooting Sports Foundation, Inc. v. Melson* or in the redacted format that the agency used to produce 2013–14 data in this litigation. The previously released data met the requirements of statistical aggregate data under exception (C), so it

would logically meet the requirement in this case.[8]  To hold otherwise, would create judicially constraining precedent requiring the agency to produce only one type of disclosure by the agency.

CIR's requests the type of data ATF has already produced under exception (C).  CIR seeks statistical aggregate data that the ATF has the authority to publish under the statute.  For these reasons, the Court should reverse the district court's ruling.

## III. DISCLOSURE OF INFORMATION IN A DATABASE, EVEN WITH REDACTIONS, DOES NOT REQUIRE CREATION OF A NEW DOCUMENT.

ATF has a statutory obligation under FOIA to search all records that exist in response to a request.  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 161–62 (1975) (FOIA establishes a statutory right of access to *all existing* agency records).  While the government has no obligation to create a new document under FOIA, case law has established that searching a database by a code or redacting a column in a spreadsheet does not amount to the creation of a new record.  *Nat'l Sec.*

---

[8] As CIR discusses further below at 42–49, the district court arrived at the contradictory conclusions that producing statistical aggregate data would require the creation of a new record and that production of the spreadsheet would not be statistical aggregate data.  *See* 1ER018.  ATF asserted that any responsive production would require a database search, extraction, compilation, analysis, and software manipulation.  *Id.*  The court accepted that assertion at face value, despite contrary evidence that a code already exists to answer this query and that ATF's has previously disclosed statistical aggregate data in published reports.  *See id.*

*Counselors v. C.I.A.*, 898 F. Supp. 2d 233, 259 (D.D.C. 2012). Instead, existing records must be disclosed, regardless of format, whether it appears in a column, in the metadata, or with redactions. The district court erred in holding otherwise.

Contrary to the agency's argument, there is nothing novel about searching and disclosing statistical aggregate data from a database. In updating FOIA, Congress explicitly mandated disclosure of records in that way. For instance, Congress broadly redefined "record" in the "E-FOIA Amendments," 110 Stat. 3048, to include all information stored "in any format, including an electronic format." 5 U.S.C. §§ 552(a)(3)(D), (f)(2)(A). The Amendments instruct that "[s]orting a database by a particular data field (*e.g.,* date, category, title) . . . [*i.e.*] the application of codes or some form of programming . . . does not involve creating new records or conducting research—it is just another form of searching that is within the scope of an agency's duties in responding to FOIA requests." *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d at 270 (citations and quotation marks omitted); *accord People for the Am. Way Found. v. U.S. Dep't of Justice*, 451 F. Supp. 2d 6, 14 (D.D.C. 2006) (concluding "[e]lectronic database searches are thus not regarded as involving the creation of new records") (citations and quotation marks omitted); *Schladetsch v. U.S. Dep't of Hous. & Urban Dev.,* No. 99-0175, 2000 WL 33372125 at *3 (D.D.C. April. 4, 2000) (same).

---

The court then failed to recognize that an alternative method of production would

The legislative history further dispels any doubts.  It states that the main objective of the Amendment was "to let requestors obtain information in the form most useful to them."  H.R. Rep. No. 104-795, 104th Congress, 2d Sess. 11 (1996).  For example, a contemporaneous House Report writes:

> Computer records found in a database rather than in a file cabinet may require the application of codes or some form of programming to retrieve the information.  Under the definition of "search" in the bill, the review of computerized records would not amount to the creation of records.  Otherwise, it would be virtually impossible to get records maintained completely in an electronic format, like computer database information, because some manipulation of the information likely would be necessary to search the records.

*Id.* at 22.  Congress thus clarified that, while new technology may alter the nature or format of data that FOIA requests target (e.g. the manner of storage or delivery of data), technology should be used to "enhance public access."  Pub. L. No. 104-231, § 2(a)(6), 110 Stat. 3048.

Similarly, other later laws support the general trend toward transparency across all new electronic formats of government data.  For instance, the FOIA Improvement Act of 2016 (Public Law No. 114–185) requires agencies to "make the raw statistical data used in each [annual FOIA] report available in a timely manner for public inspection in an electronic format."  5 U.S.C. § 552(e)(3).  "The raw, statistical data used in the agency's Annual FOIA Report must be available without charge, in an aggregated, searchable format, that may be downloadable in

---

still be statistical aggregate data.  *Id.*

bulk."  DOJ Office of Information Policy ("OIP"), *Summary of the FOIA*

*Improvement Act of 2016*, U.S. DEP'T OF JUSTICE (Aug. 17, 2016),

https://www.justice.gov/oip/oip-summary-foia-improvement-act-2016.  As OIP has

explained in its guidance to agencies:

> To meet this requirement, agencies will need to provide the
> underlying data elements behind each request, administrative appeal,
> and consultation received and processed that is used to create the
> Annual FOIA Report . . . This data . . .contains such fields as the date
> the request or appeal was received, the request or appeal disposition,
> and the date closed.

*Department of Justice Handbook for Agency Annual Freedom of Information Act*

*Reports:  Guidance for FOIA Professionals on Proper Tracking and Detailed*

*Instructions for Preparing the Annual Report*, 75–76 (Feb. 16, 2017),

https://www.justice.gov/oip/page/file/160716/download.  It is thus clear that all

agencies—including the ATF—are expected to make the type records requested

here available to the public.

Even before the E-FOIA Amendments, however, courts recognized that

agencies had obligations to use technology tools to respond to FOIA requests for

information contained in their databases.  In a 1994 case in the District of

Columbia, an agency had refused to respond to a FOIA request claiming that

"would require a 'query search' through [the agency's] computerized database" for

specific information concerning particular employers.  *Thompson Publ'g Grp. v.*

*Health Care Fin. Admin.*, No. 92-2431-LFO, 1994 WL 116141, *1 (D.D.C. Mar.

15, 1994).  In a prescient decision, the court wrote:

> Plaintiff has the better argument. . . . A traditional FOIA search could
> include physically retrieving 1000 different paper forms or "records,"
> each of which has been placed in a separate file, and each of which
> contains only one relevant paragraph.  This would be analogous to
> (and much more difficult than) a computer "query search" for those
> paragraphs.  If defendant has categorized its data by size of employer,
> for example, and the plaintiff's request can be retrieved by a single
> search or a simple series of searches, then the information exists in the
> form of parts of multiple "records."

*Id*.  The 1996 E-FOIA Amendments bolstered that logical and straightforward

conclusion.

For over a decade, courts interpreting this issue have agreed that producing

information from a database through codes, with or without redaction, does not

amount to creation of a new record and falls within the scope of FOIA's search

obligations.  For instance, in a case decided just last year, the court held that

"neither sorting a pre-existing database of information to make information

intelligible, nor extracting and compiling data . . . as to any discrete pieces of

information that [an] agency does possess in its databases, amounts to the creation

of a new agency record."  *Long v. ICE*, No. 17-cv-01097 (APM), 2018 WL

4680278, at *8 (D.D.C. Sept. 28, 2018) (quotation marks omitted).  Many other

courts have agreed.  *See also Bothwell v. CIA*, No. 13-cv-05439, 2014 WL

5077186, *5 (N.D. Cal. Oct. 9, 2014) (the agency searched the database and then

manually reviewed hits for responsiveness); *Kensington Research & Recovery v. U.S. Dep't of Hous. & Urban Dev.*, 620 F. Supp. 2d 908, 910 (N.D. Ill. 2009) (requiring agency to search and produce records "stored in various electronic databases maintained by [agency] and its affiliates"); *People for the Am. Way Found.,* 451 F. Supp. 2d at 15 (requiring agency to conduct PACER search of 44,000 electronically-stored files to identify data targeted in FOIA request in accordance with its duty to conduct a "reasonable search"); *Schladetsch*, 2000 WL 33372125, at *3 ("extracting and compiling that data does not amount to the creation of a new record," even though "the net result of complying with the request will be a document the agency did not previously possess[.]"); *see also id.* ("The programming necessary to conduct the search is a search tool and not the creation of a new record.").

In *National Security Counselors*, 898 F. Supp. at 270, the court reiterated that "sorting a pre-existing database of information to make information intelligible does not involve the creation of a new record because, as Congress noted in the legislative history to the E-FOIA Amendments, '[c]omputer records found in a database rather than a file cabinet may require the application of codes or some form of programming to retrieve the information.'" (quoting H.R. Rep. 104-795, at 22 (1996)). Thus, a request that seeks "entire fields of data from particular electronic databases" is proper under FOIA, and as long as the requester

seeks "the contents of the database"—as opposed to an analysis of the data, or other information that does not otherwise exist—FOIA requires production. *Id*. at 271. *See also Ayuda, Inc. v. FTC*, 70 F. Supp. 3d 247, 254 (D.D.C. 2014) (agency processed requests for specific data fields in database containing millions of records.).

ATF's objection to CIR's request on the ground that the information requires data processing is a pretext. CIR lawfully and appropriately seeks important information—data on the number of law enforcement weapons that have been sold back into the marketplace—data that already exists within the FTS database and is easily available. ATF conceded that the necessary code to identify and produce this information already exists. *See supra* n.3. Thus, a simple search of the FTS System would yield the results. As Defendant has stated, "the Firearm Trace System database includes close-out codes for each trace, including those related to law enforcement and government agencies. . . ." 3ER311–312. Similarly, in its brief the government states "it is NTC policy" to use a code "indicating 'this firearm was traced to a government and/or law enforcement agency.'" 3ER303–304. Moreover, the agency has also produced similar data in other agency actions. 2ER223, n.2; 2ER229, n.2.

Notwithstanding the ready availability of the information and the ease of accessing and producing it, the district court held that CIR's FOIA request was for

47

"a statistical summary or listing of a particular subset of data points" because the relevant numbers were "information that does not currently exist." 1ER017. That conclusion was wrong: ATF did not demonstrate that its database was incapable of generating the requested data by an electronic search, as was its burden. *See Nat'l Sec. Counselors*, 898 F. Supp. 2d at 270 ("[R]ecords found in a database . . . may require the application of codes or some form of programming to retrieve the information."). The agency also has the burden of showing through declarations that its search was adequate. *See* 5 U.S.C. § 552(a)(4)(B) (the "burden is on the agency to sustain its action" with regard to any withholding). "The burden is [also] on the agency to establish that all reasonably segregable portions of a document have been segregated and disclosed." *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008). ATF has not met that burden.

A ruling in favor of the government's argument here would put many federal government databases beyond the reach of the FOIA. *See Jamie A. Grodsky, The Freedom of Information Act in the Electronic Age: the Statute Is Not User Friendly*, 31 JURIMETRICS J. 17, 26 (1990). Indeed, the nation is fast approaching a point where vast amount of information is or will be exclusively in databases, and upholding the government's position here would effectively nullify FOIA in the digital age.

48

## CONCLUSION

CIR respectfully requests that this Court reverse the district court's ruling and remand with instructions that the district court order ATF to produce all the records CIR requested.


Dated: March 21, 2019        Respectfully submitted,

FENWICK & WEST LLP


By: *s/D. Victoria Baranetsky*
D. Victoria Baranetsky

Andrew P. Bridges
Ciara N. McHale
Meghan E. Fenzel

Attorneys for Plaintiff-Appellant
THE CENTER FOR INVESTIGATIVE
REPORTING

49

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, the undersigned counsel for Plaintiff-Appellant The Center For Investigative Reporting is not aware of any related cases pending before this Court.

Dated:  March 21, 2019               Respectfully submitted,

                                   FENWICK & WEST LLP


                                   By: *s/D. Victoria Baranetsky*
                                      D. Victoria Baranetsky

                                      Andrew P. Bridges
                                      Ciara N. McHale
                                      Meghan E. Fenzel

                                   Attorneys for Plaintiff-Appellant
                                   THE CENTER FOR INVESTIGATIVE REPORTING

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 18-17356_____

I am the attorney or self-represented party.

**This brief contains 10,948 words,** excluding the items exempted by Fed. R.

App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P.

32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** *s/D. Victoria Baranetsky*_____ **Date**: March 21, 2019
*(use "s/[typed name]" to sign electronically-filed documents)*

51