**No. 18-17356**

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

THE CENTER FOR INVESTIGATIVE REPORTING,

 Plaintiff-Appellant,

 v.

UNITED STATES DEPARTMENT OF JUSTICE,

 Defendant-Appellee.

───────────────────────────

**ANSWERING BRIEF FOR THE UNITED STATES DEPARTMENT OF JUSTICE AS APPELLEE**

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
NO. 17-CV-06557
───────────────────────────

**DAVID L. ANDERSON**
United States Attorney

**SARA WINSLOW**
Chief, Civil Division

**ROBIN M. WALL**
Assistant United States Attorney
450 Golden Gate Ave. 11th Floor
San Francisco, CA 94102
(415) 436-7071

**Attorneys for Defendant-Appellee**
May 22, 2019          **U.S. DEPARTMENT OF JUSTICE**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION ................................................................................1

JURISDICTIONAL STATEMENT ............................................................2

STATEMENT OF ISSUES ....................................................................2

STATEMENT OF THE CASE...................................................................3

    A. FACTUAL BACKGROUND ...........................................................3

      1.  The ATF and the Firearm Trace System database ...................................3

      2.  The Tiahrt Amendment ................................................6

      3.  The Freedom of Information Act ................................................8

    B.  ADMINISTRATIVE AND JUDICIAL PROCEEDINGS ........................10

SUMMARY OF ARGUMENT ................................................................12

ARGUMENT ................................................................................14

  I.   STANDARD OF REVIEW ................................................................14

  II.  THE DISTRICT COURT PROPERLY DETERMINED THAT INFORMATION AND RECORDS IN ATF'S FIREARMS TRACE SYSTEM DATABASE WERE PROPERLY WITHHELD PURSUANT TO FOIA EXEMPTION 3 .........................................................14

    A.  ATF properly withheld firearm trace records pursuant to FOIA Exemption 3 ................................................................14

    B.  The OPEN FOIA Act of 2009 does not compel disclosure .......................18

    C.  The exceptions to the Tiahrt Amendment's disclosure prohibition do not permit disclosure here ................................................................22

    D.  Disclosures of trace data by ATF in certain enforcement and administrative proceedings are specifically authorized and not relevant to CIR's FOIA request. ................................................29

  III.  THE DISTRICT COURT PROPERY DETERMINED THAT PRODUCING THE STATISTICAL DATA SOUGHT BY PLAINTIFF-APPELLANT WOULD REQUIRE ATF TO CREATE A NEW RECORD ......31

CONCLUSION ................................................................................37

CERTIFICATION OF COMPLIANCE WITH FRAP 32(a)(7)(C) ........................38

STATEMENT OF RELATED CASES ........................................................39

i

# TABLE OF AUTHORITIES

## Cases

*Abdeljabbar v. Bureau of Alcohol, Tobacco, Firearms and Explosives*,
    74 F.Supp.3d 158 (D.D.C. 2014) .......................................................... 18, 19, 20

*Animal Legal Defense Fund v. U.S. Food & Drug Administration*,
    836 F.3d 987 (9th Cir. 2016) ............................................................................. 8, 14

*Bothwell v. CIA*,
    No. 13-cv-05439-JSC, 2014 WL 5077186 (N.D. Cal. Oct. 9, 2014)..................36

*Caruso v. U.S. Bureau of Alcohol, Tobacco & Firearms*,
    495 Fed. Appx. 776 (9th Cir. 2012) ....................................................................16

*City of Chicago v. U.S. Dept. of Treasury, Bureau of Alcohol, Tobacco, and
Firearms*, 423 F. 3d 777 (7th Cir. 2005) .................................................. 9, 17, 25

*Environmental Prot. Info. Ctr. v. U.S. Forest Serv.*,
    432 F.3d 945 (9th Cir. 2005)..............................................................................14

*Fowlkes v. Bureau of Alcohol, Tobacco, Firearms and Explosives*,
    139 F.Supp.3d 287 (D.D.C. 2015) ......................................................................18

*FTC v. Grolier Inc.*,
    462 U.S. 19 (1983) ................................................................................................9

*In re Glacier Bay*,
    944 F.2d 577 (9th Cir. 1991)...............................................................................20

*Hamdan v. U.S. Dep't of Justice*,
    797 F.3d 759 (9th Cir. 2015)...................................................................... 12, 15

*Higgins v. U.S. Dep't of Justice*,
    919 F.Supp.2d 131 (D.D.C. 2013) ......................................................................18

*Hudgins v. IRS*,
    620 F.Supp. 19 (D.D.C. 1985)............................................................................33

*John Doe Agency v. John Doe Corp.*,
    493 U.S. 146 (1989) ..............................................................................................9

*Kissinger v. Reporters Comm. for the Freedom of the Press*,
    445 U.S. 136 (1980) ............................................................33

*Larouche v. U.S. Securities and Exchange Commission*,
    289 Fed.Appx. 231 (9th Cir. 2008) ....................................33

*National Labor Relations Bd. v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975) ..................................................... 13, 31

*National Sec. Counselors v. CIA*,
    898 F.Supp.2d 233 (D.D.C. 2012) ........................... 13, 34, 35

*National Shooting Sports Found. v. Jones*,
    840 F.Supp.2d 310 (D.D.C. Jan. 13, 2012) .........................30

*P.W. Arms, Inc. v. United States*,
    No. C15-1990-JCC, 2017 WL 319250 (W.D. Wash. Jan. 23, 2017)...................17

*Reep v. U.S. Dep't of Justice*,
    302 F.Supp.3d 174 (D.D.C. 2018) ..................................... 9, 12, 15, 17

*Ring Precision, Inc. v. Jones*,
    No. SA-11-CA-663, 2012 WL 12883131 (W.D. Tex. July 2, 2012)...................30

*Rodriguez v. United States*,
    480 U.S. 522 (1987) ............................................................21

*Roman Catholic Archbishop of Portland in Or.*,
    661 F.3d 417 (9th Cir. 2011) ..............................................25

*Ron Peterson Firearms, LLC v. Jones*,
    No. 11-cv-00678-JEC/LFG, 2013 WL 12085975 (D.N.M. March 27, 2013)......30

*Smith v. ATF*,
    No. 13–13079, 2014 WL 3565634 n. 2 (E.D. Mich. July 18, 2014)............ 19, 20

*Snyder v. Department of Defense*,
    No. 14-cv-01746-KAW, 2015 WL 9258102 (N.D. Cal. Dec. 18, 2015)............31

*TPS, Inc. v. U.S. Dep't of Def.*,
    330 F.3d 1191 (9th Cir. 2003) ............................................14

*United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
  489 U.S. 749 (1989) ...................................................................................9

*United States v. Fausto*,
  484 U.S. 439 (1988) .......................................................................... 21, 25

*Weinberger v. Catholic Action of Hawaii/Peace Educ. Project*,
  454 U.S. 139 (1981) ...................................................................................8

*Yonemoto v. Dep't of Veterans Affairs*,
  686 F.3d 681 (9th Cir. 2012) .....................................................................8

*Zemansky v. U.S. E.P.A.*,
  767 F.2d 569 (9th Cir. 1985) ............................................................. 13, 31

## Statutes

5 U.S.C. § 552 ....................................................................................... passim

18 U.S.C. § 921-930.............................................................................. 3, 29

18 U.S.C. § 923 ...........................................................................................30

28 U.S.C. § 1291 ...........................................................................................2

28 U.S.C. § 1331 ...........................................................................................2

Consolidated Appropriations Act, 2005, Pub. L. No. 108-447, 118 Stat. 2809,
  2859-60 .......................................................................................................7

Consolidated Appropriations Act, 2008, Pub. L. No. 110-161, 121 Stat. 1844,
  1903-04 .......................................................................................................7

Consolidated Appropriations Act, 2010, Pub. L. No. 111-117, 123 Stat. 3034,
  3128-29 .......................................................................................................7

Consolidated Appropriations Act, 2012, Pub. L. No. 112-155, 125 Stat. 552,
  609-610 ............................................................................................. 2, 6, 8

Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213 ...................3

**Rules**

FRAP 32(a)(7)(C) ..................................................................................38

**Other Authorities**

H.R. Rep. No. 240, 110th Congress, 1st Sess. (2007) (House Report to the 2008
Appropriations Act), available at 2007 WL 2075231 ........................................24

H.R. Rep. No. 576, 108th Congress, 2d Sess. (2004) (House Report to the 2005
Appropriations Act), available at 2007 WL 2075231 ........................................23

## INTRODUCTION

This case concerns a Freedom of Information Act request for statistical data concerning certain firearm traces conducted since 2006 by the U.S. Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF").  ATF searched for, but could not locate that statistical data in any existing record, because ATF had not previously conducted the requested statistical analysis.  The Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") does not require ATF to create a new record to satisfy plaintiff-appellant Center for Investigative Reporting's ("CIR") request for information—that is, FOIA does not require ATF to identify, compile, and analyze the relevant firearm trace data to prepare and produce the requested information.

Moreover, ATF cannot provide the underlying firearm trace records to CIR to conduct its own statistical analysis, because that disclosure is prohibited by statute.  Since 2003, Congress has expressly prohibited ATF from disclosing firearm trace information from the Firearms Trace System database the agency maintains.  The statutory provision prohibiting the disclosure of trace information is often referred to as the "Tiahrt Amendment" after its sponsor, former U.S. Representative Todd Tiahrt (R-Kan.).  The most recent iteration provides that "no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National

Trace Center of the [ATF]." Consolidated Appropriations Act of 2012, Pub. L. No. 112–155, 125 Stat. 552 (2011).

The district court correctly concluded that FOIA does not compel ATF to compile and analyze data to create a new record; and that the Tiahrt Amendment prohibits ATF from producing the underlying firearm trace records. For these reasons and those discussed below, the Court should affirm the district court's decision to grant summary judgment in favor of defendant-appellee ATF.

## JURISDICTIONAL STATEMENT

Appellant CIR appeals from a final judgment entered on November 13, 2018, by the Honorable Jacqueline Scott Corley of the United States District Court for the Northern District of California. Excerpts of Record (Dkt. 14-1) ("ER") 1. The district court had granted in relevant part defendant-appellee ATF's motion for summary judgment. ER 3-19. CIR timely filed a notice of appeal on December 11, 2018. ER 20-22. Because CIR's claims arise under FOIA, the district court had jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331. This Court has jurisdiction over the appeal under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1. Whether the district court properly concluded that firearm trace information and records maintained by ATF in the ATF's Firearms Trace System database were properly withheld from disclosure pursuant to 5 U.S.C. § 552(b)(3)

2

("FOIA Exemption 3" or "Exemption 3") in response to CIR's March 23, 2017, FOIA request.

2.  Whether the district court properly concluded that FOIA does not compel ATF to compile and analyze firearm trace data in order to produce a new record reflecting the statistical information sought by CIR.

## STATEMENT OF THE CASE

### A.  FACTUAL BACKGROUND

#### 1.  The ATF and the Firearm Trace System database

The Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") is a law enforcement agency within the U.S. Department of Justice.  ATF is responsible for enforcement of federal firearms laws, including the Gun Control Act of 1968 ("GCA"), Pub. L. No. 90-618, 82 Stat. 1213 (codified as amended at 18 U.S.C. §§ 921-930).  ER 306.

Pursuant to the GCA, the U.S. Attorney General is authorized to administer firearms tracing—*i.e.*, the systematic tracking of a recovered firearm from its manufacturer or importer, through its subsequent introduction into the distribution chain, in order to identify a purchaser.  ER 306.  The Attorney General has delegated ATF the sole federal agency authorized to trace firearms.

To carry out its firearms tracing functions, ATF maintains the Firearm Trace System database, which is a massive electronic database that serves to support

3

criminal investigations by federal, state, local, and foreign law enforcement agencies. ER 306. The database is maintained at the National Tracing Center ("NTC"). ER 306. Via a March 23, 2017 FOIA request, CIR requested data from the Firearm Trace System database showing the number of firearm traces involving prior law enforcement ownership from 2006 to the present. ER 328-329.

A firearm trace begins when the NTC receives a request from a federal, state, local, or foreign law enforcement agency that has recovered a firearm or suspects a certain firearm has been used in a crime. ER 306-307. The ATF also requests traces in connection with the investigations that the agency conducts itself. ER 307. Firearms for which traces are requested typically have been recovered at the scene of a crime or from the possession of a suspect, felon, or other person who is prohibited from owning the firearm, or may have been purchased by law enforcement in an undercover capacity. ER 307.

To conduct a trace, the requesting agency must provide the NTC with information about the firearm, including what kind of gun (*e.g.*, pistol, revolver, shotgun), the manufacturer, the caliber, and the serial number. ER 307. In a typical case, after receiving a trace request, NTC personnel contact the manufacturer or importer to determine when and to whom the firearm in question was sold. ER 307. When the NTC contacts a Federal Firearm Licensee ("FFL") requesting information, ATF informs the licensee only about the firearm involved

4

in the trace; and the FFL is not informed of any circumstances relating to the alleged criminal conduct nor the identity of the law enforcement agency that recovered the firearm.  ER 307.

In most instances, the manufacturer or importer has sold the firearm to an FFL wholesaler.  ER 307.  NTC personnel then contact the wholesaler to determine when and to whom the firearm in question was sold, usually to an FFL retailer. ER 307.  The tracing process continues as long as records allow and is considered successful when ATF can identify the first retail purchaser (a non-FFL).  ER 303. ATF's tracing process generally stops at the first retail purchase because any subsequent disposition of the firearm by a non-FFL is not subject to GCA record-keeping or reporting requirements.  ER 307.

When a firearm is traced to domestic law enforcement or a U.S. government agency purchaser, the NTC has the ability to continue to trace the firearm through the law enforcement or government agency to determine the firearm's subsequent disposition (if any).  ER 307.  For example, while it is NTC policy to close routine priority traces with the "S5" close-out code in the Firearm Trace System database, indicating "THIS FIREARM WAS TRACED TO A GOVERNMENT AND/OR LAW ENFORCMENT AGENCY," this may not end the inquiry.  ER 307.  After receiving an S5 result, the trace requestor may ask the NTC to reopen and continue the trace by contacting the law enforcement or government agency that the firearm

was traced to in order to obtain additional information. ER 307. There are three additional close-out codes in the Firearm Trace System database (S6, SH, DN) that indicate a firearm was traced to a law enforcement or government agency. ER 307-308.

The Firearm Trace System database contains information associated with each of the hundreds of thousands of firearm traces conducted by ATF each year for more than 23,000 law enforcement agencies. ER 308. As of April 25, 2018, the database contained data associated with 6,876,808 traces. ER 308. The trace database contains a large number of data elements for each trace request—the database contains over 75 tables with a combined total of 800 columns/fields. ER 308. Those data elements include information provided to ATF by the agency that requests the trace, as well as information that ATF acquires during the tracing process. ER 308.

### 2. The Tiahrt Amendment

Since 2003, Congress has expressly prohibited ATF from disclosing firearm trace information. ER 308. The statutory provision prohibiting the disclosure of trace information is often referred to as the "Tiahrt Amendment" after its sponsor, former U.S. Representative Todd Tiahrt (R-Kan.). ER 308.

The most recent iteration of the Tiahrt Amendment, which prohibits ATF disclosure of trace data, is found in the Consolidated Appropriations Act of 2012,

6

Pub. L. No. 112–155, 125 Stat. 552 (2011) ("2012 Appropriations Act"); *see also*

ER 308.  The 2012 Appropriations Act provides:

> That, during the current fiscal year and in each fiscal year thereafter, no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center of the Bureau of Alcohol, Tobacco, Firearms and Explosives …; and all such data shall be immune from legal process, shall not be subject to subpoena or other discovery, shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based on the data, in a civil action in any State (including the District of Columbia) or Federal court or in an administrative proceeding other than a proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms and Explosives to enforce the provisions of chapter 44 of such title, or a review of such an action or proceeding;

125 Stat. 552, 609-610.  This same prohibition on disclosure has appeared in

annual appropriations since 2005.  *See, e.g.*, Consolidated Appropriations Act,

2010, Pub. L. No. 111–117, 123 Stat. 3034, 3128-29 ("2010 Appropriations Act");

Consolidated Appropriations Act, 2008, Pub. L. No. 110–161, 121 Stat. 1844,

1903-04 ("2008 Appropriations Act"); Consolidated Appropriations Act, 2005,

Pub. L. No. 108–447, 118 Stat. 2809, 2859–60 ("2005 Appropriations Act").

The 2012 version of the Tiahrt Amendment includes a provision that makes

clear that ATF may publish certain statistical data notwithstanding the general

prohibition:

> [T]his proviso shall not be construed to prevent: … (C) the publication of annual statistical reports on products regulated by

7

> the Bureau of Alcohol, Tobacco, Firearms and Explosives, including total production, importation, and exportation by each licensed importer (as so defined) and licensed manufacturer (as so defined), or statistical aggregate data regarding firearms traffickers and trafficking channels, or firearms misuse, felons, and trafficking investigations.

Consolidated Appropriations Act of 2012, Pub. L. No. 112–155, 125 Stat. 552 (2011) ("2012 Appropriations Act").  Subpart (C) of the proviso thus permits the "publication" by ATF of "annual statistical reports" regarding the firearms industry and specified "statistical aggregate data."

### 3. The Freedom of Information Act

The Freedom of Information Act, 5 U.S.C. § 552, generally mandates disclosure upon request of records held by an agency of the federal government. "At the same time, the FOIA contemplates that some information can legitimately be kept from the public through the invocation of nine 'exemptions' to disclosure." *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 687 (9th Cir. 2012) (citing 5 U.S.C. § 552(b)(1)-(9)), *overruled in part on other grounds*, *Animal Legal Defense Fund v. U.S. Food & Drug Administration*, 836 F.3d 987 (9th Cir. 2016). Section 552(b) identifies categories of records that are exempt from compelled disclosure.  FOIA thus reflects Congress's determination "to balance the public's need for access to official information with the Government's need for confidentiality."  *Weinberger v. Catholic Action of Hawaii/Peace Education Project*, 454 U.S. 139, 144 (1981).

In interpreting FOIA, the U.S. Supreme Court "has recognized that the statutory exemptions are intended to have meaningful reach and application." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). The Court has also emphasized the need for a "practical approach" to the interpretation of FOIA. *Id.* at 157; *see also FTC v. Grolier Inc.*, 462 U.S. 19, 28 (1983) (noting the importance of "workable rules" governing the implementation of the FOIA); *United States Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 779 (1989) (quoting *Grolier*, 462 U.S. at 22, 27-28).

FOIA Exemption 3, 5 U.S.C. § 552(b)(3), authorizes an agency to withhold records that have been "specifically exempted from disclosure by statute." Courts, including the district court in this case, have repeatedly held that the various iterations of the Tiahrt Amendment since 2005 exempt records in the Firearms Trace System database from disclosure pursuant to FOIA. *See., e.g., City of Chicago v. U.S. Dept. of Treasury, Bureau of Alcohol, Tobacco, and Firearms*, 423 F. 3d 777, 781-82 (7th Cir. 2005) ("[T]he 2005 [Appropriations] Act amounts to a change in substantive FOIA law in that it exempts from disclosure [trace] data previously available to the public under FOIA.") (citations omitted); *Reep v. U.S. Department of Justice*, 302 F.Supp.3d 174, 183 (D.D.C. 2018) ("The appropriations bill leaves the ATF with no discretion. And courts have previously held that Exemption 3 protects ATF firearms trace data.") (citations omitted).

9

## B.    ADMINISTRATIVE AND JUDICIAL PROCEEDINGS

CIR submitted its FOIA request on March 23, 2017.  ER 328-329.  That request sought five categories of information:

> [1] The National Tracing Center's internal completion codes for law enforcement weapons, current or former.
>
> [2] Any and all memos, communications, reports, and other to documents related to E-Trace matches of current or former law enforcement weapons, from 2006 to the present.
>
> [3] Total number of weapons traced back to former law enforcement ownership, annually from 2006 to the present.
>
> [4] Copies of any and all communications notifying law enforcement agencies when their current or former weapons have entered or been involved in an E-Trace.
>
> [5] Copies of policies and guidance dictating how the agency handles law enforcement weapons in E-Trace.

ER 328.  On May 26, 2017, ATF acknowledged receipt of CIR's FOIA request.

ER 333.  By November 13, 2017, however, the ATF had not yet released any records, and CIR filed this lawsuit to compel a response to its request.  ER 311.

ATF provided interim responses to CIR's FOIA request on January 31 and February 2, 2018.  ER 311.  ATF provided a third and final response on March 23, 2018.  ER 311.  Due to the statutory prohibition on release of trace data, ATF was unable to release information from the Firearm Trace System database in response to the third category of information requested by CIR; although ATF was able to

produce existing records created and maintained outside of the database that reflected some traces to prior law enforcement ownership.  ER 311-312.

By stipulation dated March 29, 2018, the parties agreed to submit their dispute regarding the disclosure of firearms trace data to the district court for resolution.  ER 314-316.  On April 26, 2018, ATF filed a motion for summary judgment arguing that the agency was entitled to summary judgment on the grounds that (i) ATF is specifically prohibited by statute—the Tiahrt Amendment—from disclosing records from the Firearm Trace System database and thus properly withheld any responsive records pursuant to FOIA Exemption 3; and (ii) CIR's FOIA request for firearms trace data (category three) would require ATF to create a new record, which cannot be compelled under FOIA.  ER 345. On May 24, 2018, CIR filed its opposition to ATF's motion and cross-motion for summary judgment, arguing in relevant part that (i) the firearm trace data requested was not properly withheld pursuant to Exemption 3; and (ii) the FOIA request did not require ATF to create a new document.  ER 345.  ATF filed its reply and opposition to the cross-motion on June 7, 2018; and CIR filed its reply on June 21, 2018.  ER 344-345.

The district court heard oral argument on the cross motions on June 28, 2018.  ER 344.  On July 10, 2018, the district court issued its order on the parties' cross motions for summary judgment.  ER 344.  In relevant part, the district court

granted the ATF's motion for summary judgment, concluding that "the Tiahrt Amendment is a 'statute of exemption within the meaning of Exemption 3,'" permitting the withholding of trace records from the Firearm Trace System database. ER 13 (quoting *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 776 (9th Cir. 2015). The district court further concluded that the Tiahrt Amendment does not prohibit the release of "*existing* statistical aggregate data," but that there was no existing record reflecting the statistical data CIR sought and "complying with CIR's request for statistical aggregate data would require ATF to create a new report, something the Court cannot compel it to do under the FOIA." ER 18 (emphasis in original).

## SUMMARY OF ARGUMENT

This Court should affirm the district court's order granting summary judgment in favor of ATF with respect to CIR's FOIA request for the "[t]otal number of weapons traced back to former law enforcement ownership, annually from 2006 to the present." ER 328. First, to the extent that CIR's FOIA request sought the disclosure of firearm trace records (in whole or part) maintained in ATF's Firearm Trace System database, those records are exempt from disclosure pursuant to FOIA Exemption 3, and any responsive records were properly withheld by ATF. *See, e.g.*, *Reep v. U.S. Dep't of Justice*, 302 F.Supp.3d 174, 184 (D.D.C. 2018). The plain language of the Tiahrt Amendment makes clear Congress's intent

to prohibit ATF from using federal funds "to disclose part or all of the contents of the Firearms Trace System database maintained by the National Trace Center." 125 Stat. at 609-610. Accordingly, firearm trace records maintained in that database are properly withheld pursuant to FOIA Exemption 3, which exempts from disclosure records "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3).

Second, to the extent that CIR's FOIA request did not seek—in whole or part—the actual firearm trace records maintained in ATF's Firearms Trace System database, but instead sought "statistical aggregate data" about those firearm trace records, FOIA does not require ATF to compile that data and create a document for production in response to CIR's request. *See, e.g.*, *National Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 161-62 (1975); *Zemansky v. U.S. E.P.A.*, 767 F.2d 569, 573-74 (9th Cir. 1985). At the time of the request, ATF had not prepared a statistical analysis reflecting the information sought by CIR—*i.e.*, the "[t]otal number of weapons traced back to former law enforcement ownership, annually from 2006 to the present." ER 328. The district court correctly concluded that FOIA does not compel ATF to undertake that work. *See, e.g.*, *National Sec. Counselors v. CIA*, 898 F.Supp.2d 233, 259 (D.D.C. 2012) (holding that a FOIA request seeking a "listing or index of a database's contents … is a request that requires the creation of a new record").

13

## ARGUMENT

## I.     STANDARD OF REVIEW

This court reviews interpretations of FOIA *de novo*. *See TPS, Inc. v. U.S. Dep't of Def.*, 330 F.3d 1191, 1194 (9th Cir. 2003). Whether an exemption applies is a question of law reviewed *de novo*. *See Environmental Prot. Info. Ctr. v. U.S. Forest Serv.*, 432 F.3d 945, 947 (9th Cir. 2005). Summary judgment decisions in FOIA cases are reviewed *de novo*. *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 990 (9th Cir. 2016). In reviewing a grant of summary judgment in a FOIA action, this court will "overturn the district court's factual findings underlying its decision only for clear error." *See Environmental Prot. Info. Ctr.*, 432 F.3d at 947.

## II.    THE DISTRICT COURT PROPERLY DETERMINED THAT INFORMATION AND RECORDS IN ATF'S FIREARMS TRACE SYSTEM DATABASE WERE PROPERLY WITHHELD PURSUANT TO FOIA EXEMPTION 3.

### A.     ATF properly withheld firearm trace records pursuant to FOIA Exemption 3.

To the extent that CIR's FOIA request for information regarding the "[t]otal number of weapons traced back to former law enforcement ownership, annually from 2006 to the present" sought the disclosure of firearm trace records maintained in ATF's Firearm Trace System database, those records are exempt from

disclosure pursuant to FOIA Exemption 3, and any responsive trace records were

properly withheld by ATF. *See, e.g.*, *Reep*, 302 F.Supp.3d at 184.

> FOIA Exemption 3 exempts from disclosure records:

>> specifically exempted from disclosure by statute ... if that statute (A)(i) requires that the matter be withheld from the public in such a manner as to leave no discretion on the issue; or (A)(ii) establishes particular criteria from withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the Open FOIA Act of 2009, specifically cites to this paragraph.

5 U.S.C. § 552(b)(3).

In the Ninth Circuit, the district courts employ a two-part inquiry to

determine whether Exemption 3 applies to a particular FOIA request. *Hamdan*,

797 F.3d at 776. The court must first determine whether the "statute identified by

the agency is a statute of exemption within the meaning of Exemption 3." *Id*.

Next, courts must ask "whether the withheld records satisfy the criteria of the

exemption statute." *Id*.

The district court correctly concluded that the Tiahrt Amendment is a

"statute of exemption" within the meaning of Exemption 3. ER 12-13. The 2012

and prior Appropriations Acts—collectively referred to as the Tiahrt

Amendment—prohibit ATF from using federal funds "to disclose part or all of the

contents of the Firearms Trace System database maintained by the National Trace

Center of the [ATF]." 125 Stat. at 609-610. That prohibition is ongoing and

15

expressly applies "during the current fiscal year and in each fiscal year thereafter." *Id*.; *see also* 2005 Appropriations Act, 118 Stat. 2809, 2859-60 ("That no funds appropriated under this or any other Act with respect to any fiscal year may be used to disclose part or all of the contents of the Firearms Trace System database … .") (emphasis added).  The statutory language further provides that "all such [trace] data shall be immune from legal process, [and] shall not be subject to subpoena or other discovery."  125 Stat. at 609-610.  This prohibition leaves ATF with no discretion to respond to a FOIA request for such information.  5 U.S.C. § 552(b)(3)(A)(i).

The district court's decision is consistent with this Court's unpublished decision in *Caruso v. U.S. Bureau of Alcohol, Tobacco & Firearms*, in which this Court held that "the ATF correctly relied on the Appropriations Act of 2010 as a withholding statute explicitly barring disclosure under FOIA Exemption 3."  495 Fed. Appx. 776, 778 (9th Cir. 2012) (unpublished).  In *Caruso,* the Court reviewed a district court's grant of summary judgment in favor of the plaintiff, who had filed a FOIA request with ATF.  The Court reversed the district court's decision, holding that ATF was not compelled to disclose any additional information.  *Id*. While the *Caruso* decision concerns the disclosure prohibition on "any information required to be kept by [firearm] licensees" and does not concern a request for information from the firearms trace database, the same statutory language is at

16

issue and the analysis remains the same:  information that "squarely falls under the statutory language of the Appropriations Act" also falls "within the scope of Exemption 3." *See id.*

Moreover, there is no dispute that the firearm trace records sought by CIR fall within the scope of the Tiahrt Amendment's prohibition.  The trace records are maintained in the Firearm Trace Systems database and responding to CIR's FOIA request would require the collection, review, and production of those trace records involving prior law enforcement ownership.  ER 310-311.  Because ATF may not use federal funds to respond and the requested data is immune from legal process, CIR's request to compel disclosure was appropriately denied.  *See, e.g., City of Chicago v. U.S. Dept. of Treasury, Bureau of Alcohol, Tobacco, and Firearms*, 423 F. 3d 777, 781-82 (7th Cir. 2005).

The district court's decision is consistent with that of other federal courts, which have consistently held that Exemption 3 protects ATF firearms trace data from disclosure under FOIA.  *See, e.g., Reep*, 302 F.Supp.3d at 184; *P.W. Arms, Inc. v. United States*, No. C15-1990-JCC, 2017 WL 319250, at *4 (W.D. Wash. Jan. 23, 2017) ("[T]he Court … adopts the holding of the vast majority of cases addressing this issue: 'disclosure prohibitions set forth by Congress in the 2005 and 2008 appropriations bills are still effective prospectively and beyond those fiscal years as a permanent prohibition, until such time as Congress expresses the

intent to repeal or modify them.'") (citation omitted); *Fowlkes v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 139 F.Supp.3d 287, 291-92 (D.D.C. 2015) (finding ATF's decision to withhold trace information pursuant to Exemption 3 to be "proper"); *Abdeljabbar v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 74 F.Supp.3d 158, 174-75 (D.D.C. 2014); *Higgins v. U.S. Dep't of Justice*, 919 F.Supp.2d 131, 145 (D.D.C. 2013) (finding the withholding of trace information pursuant to Exemption (b)(3) proper because "[t]he appropriations legislation on which [the ATF] relies explicitly bars disclosure of information 'maintained by the National Trace Center … .'") (citation omitted).

## B. The OPEN FOIA Act of 2009 does not compel disclosure.

CIR argues that the 2012 Appropriations Act does not qualify as a withholding statute under Exemption 3, because it does not cite to 5 U.S.C. § 552(b)(3)(B), which is a requirement of the OPEN FOIA Act of 2009. *See* Opening Br. at 17-18. The district court correctly rejected this argument and adopted "the holding of the majority of courts that have addressed this exact argument and concluded that 'disclosure prohibitions set forth by Congress in the 2005 and 2008 [versions of the Tiahrt Amendment] are still effective prospectively and beyond those fiscal years as a permanent prohibition, until such time as Congress expresses the intent to repeal or modify them.'" ER 14-15 (quoting

*Abdeljabbar v. Bureau of Alcohol, Tobacco & Firearms*, 74 F. Supp. 3d 158, 175-76 (D.D.C. 2014)).

While admittedly the versions of the Tiahrt Amendment passed in 2010 and 2012 were "enacted after the date of enactment of the Open FOIA Act of 2009" and do not "specifically cite[] to" 5 U.S.C. § 552(b)(3) as currently required by Exemption 3, the courts that have looked at this issue have concluded that the issue did not "'need [to] be addressed ... as the Consolidated Appropriations Act of 2008 does satisfy that subsection and ... provides a permanent prohibition against disclosure that is not limited to the fiscal year of the appropriated funds granted therein.'" *Abdeljabbar*, 74 F.Supp.3d at 174-75 (quoting *Smith v. ATF*, No. 13–13079, 2014 WL 3565634, at *5 n. 2 (E.D. Mich. July 18, 2014)).

The 2008 Appropriations Act plainly satisfied the requirements of Exemption 3 when it was enacted. As the district court in *Smith v. ATF* explained:

> Congress could not have been more specific about what types of records should be withheld. The [2008 Appropriations Act] obviously states the criteria for withholding records, satisfying [FOIA] Exemption 3 … . [T]he application of the Act to Exemption 3 is reasonable and consistent with the applicable law because the [2008 Appropriations Act] is a permanent law that does not merely apply to a single fiscal year. Although it is an appropriations bill for the fiscal year of 2008, the pertinent paragraph begins by stating "[t]hat, beginning in fiscal year 2008 and thereafter, no funds appropriated under this or any other Act may be used to disclose part or all of the contents of the Firearms Trace System database." The Act's prohibition on disclosure continues beyond fiscal year 2008 ("and thereafter"), and it also extends to all other laws ("any other Act"). The prohibition on

19

> the expenditure of appropriated funds to disclose records from the Firearms Trace System, therefore, extends laterally to other existing laws, but also prospectively and beyond fiscal year 2008.

*Smith*, 2014 WL 3565634, at *6 (internal citations and footnotes omitted).

The earlier 2005 Appropriations Act includes similar language—"no funds appropriated under this or any other Act with respect to any fiscal year may be used to disclose part or all of the contents of the Firearms Trace System database"—and for this reason, as the district court stated in *Abdeljabbar*, "the disclosure prohibitions set forth by Congress in the 2005 and 2008 appropriations bills are still effective prospectively and beyond those fiscal years as a permanent prohibition, until such time as Congress expresses the intent to repeal or modify them." 74 F.Supp.3d at 175.

Notwithstanding the permanent prohibitions against disclosure in the 2005 and 2008 statutory language, CIR argues that ATF and the Court cannot rely on those "prior iterations" of the Tiahrt Amendment, because they were rendered "obsolete" and are "no longer law." Opening Br. at 19. CIR cites *In re Glacier Bay* for the principle that if "a later act [by Congress] covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act." 944 F.2d 577, 581 (9th Cir. 1991) (citations omitted).

The record does not support the conclusion that the 2010 and 2012 Appropriations Acts were "clearly intended as a substitute" for the prior iterations

20

of the Tiahrt Amendment. In other words, there is no evidence that Congress clearly intended to repeal the permanent prohibition against disclosure of the contents of the Firearms Trace System database set forth in the 2008 Appropriations Act by passing identical prohibitory language in 2010 and 2012.

In the absence of such evidence, the Court should not find that the 2010 and 2012 acts repealed the disclosure prohibition. "[R]epeals by implication are not favored ... and will not be found unless an intent to repeal is 'clear and manifest.'" *Rodriguez v. United States*, 480 U.S. 522, 524 (1987) (citations omitted). Thus, "a later statute will not be held to have implicitly repealed an earlier one unless there is a clear repugnancy between the two." *United States v. Fausto*, 484 U.S. 439, 453 (1988) (citation omitted). Adopting CIR's argument would require the Court "to reach the implausible conclusion that Congress intended to repeal by implication a disclosure prohibition, at least with respect to FOIA, by reiterating that very prohibition in subsequent legislation." 74 F. Supp. 3d at 175-76 (citation omitted). Prior to 2009, the appropriations language at issue was understood through a number of judicial decisions to provide an appropriate statutory predicate for withholding information pursuant to Exemption 3. *See id.* "Congress's uninterrupted use of this language in appropriations bills after 2009 supports the conclusion that Congress did not intend for the judiciary to depart from this long-standing position." *Id.* (citation omitted).

21

### C.   The exceptions to the Tiahrt Amendment's disclosure prohibition do not permit disclosure here.

The district court correctly concluded that the limited exceptions to the general disclosure prohibition in the Tiahrt Amendment—related to statistical information and reports—do not "swallow the rule."  ER 14.  Nonetheless, CIR argues that disclosure is required here pursuant to subpart (C) of those exceptions. That argument is incorrect:  subpart (C) permits the publication by ATF of "annual statistical reports" and "statistical aggregate data," but does not compel the production of records maintained in the Firearms Trace System database pursuant to FOIA.

An exception to the Tiahrt Amendment's general prohibition on disclosure was first added in the 2005 Appropriations Act.  That new language provides:

> "except that this proviso shall not be construed to prevent the disclosure of statistical information concerning total production, importation, and exportation by each licensed importer (as defined in section 921(a)(9) of such title) and licensed manufacturer (as defined in section 921(a)(10) of such title)."

118 Stat. 2809, 2859–60.

The congressional purpose underlying this exception is clear and has nothing to do with disclosure pursuant to FOIA.  Following the initial passage of the Tiahrt Amendment in 2003, the broad prohibition on using federal funds to disclose the contents of the Firearms Trace System database had been interpreted as a potential

bar to a series of annual reports that ATF had previously published. As the House

Report concerning the 2005 Appropriations Act explains:

> At the same time, the Committee is concerned that the previous language has been interpreted to prevent publication of a long-running series of statistical reports on products regulated by ATF. This was never the intention of the Committee, and the new language should also make clear that those reports may continue to be published in their usual form as they pose none of the concerns associated with law enforcement sensitive information.

H.R. Rep. No. 576, 108th Cong., 2d Sess. (2004), available at 2004 WL 3044771.

The exception to the disclosure prohibition was thus intended to ensure that ATF

could continue to prepare and publish statistical reports—not to open up the

Firearms Trace System database to public disclosure via FOIA.

The exception language was further revised in the 2008 Appropriations Act,

which provides:

> [T]his proviso shall not be construed to prevent: (A) the disclosure of statistical information concerning total production, importation, and exportation by each licensed importer (as defined in section 921(a)(9) of such title) and licensed manufacturer (as defined in section 921(1)(10) of such title); (B) the sharing or exchange of such information among and between Federal, State, local, or foreign law enforcement agencies, Federal, State, or local prosecutors, and Federal national security, intelligence, or counterterrorism officials; or (C) the publication of annual statistical reports on products regulated by the Bureau of Alcohol, Tobacco, Firearms and Explosives, including total production, importation, and exportation by each licensed importer (as so defined) and licensed manufacturer (as so defined), or statistical aggregate data regarding firearms

23

> traffickers and trafficking channels, or firearms misuse, felons,
> and trafficking investigations

2008 Appropriations Act, 121 Stat. at 1904. The 2010 and 2012 Appropriations

Acts include identical language. *See* 2012 Appropriations Act, 125 Stat. 552, 609-

610; 2010 Appropriations Act, 123 Stat. 3034, 3128-29

The Congressional purpose underlying this 2008 provision is the same as in

2005—and has nothing to do with FOIA. The relevant House Report states:

> At the same time, the Committee is concerned that the previous
> year's language has been interpreted to prevent publication of a
> long-running series of statistical reports on products regulated by
> ATF. This was never the intention of the Committee, and the
> fiscal year 2008 language makes clear that those reports may
> continue to be published in their usual form as they pose none of
> the concerns associated with law enforcement sensitive
> information.

H.R. Rep. No. 240, 110th Congress, 1st Sess. (2007) (House Report to the 2008

Appropriations Act), available at 2007 WL 2075231. Thus subpart (C) is not

directed at public disclosure pursuant to FOIA, but expressly concerns

"publication" of data by ATF. The exceptions permit ATF to publish its annual

Firearms Manufacturers And Export Reports (subpart A) and state-by-state and

international reports utilizing trace data (subpart C). *See generally* ATF—Data &

Statistics, https://www.atf.gov/resource-center/data-statistics. Significantly,

subpart (C) permits the "publication of annual statistical reports … or statistical

aggregate data" by ATF. The provision's language does not permit or even

24

contemplate the release of trace data in response to FOIA requests. Subpart (C) certainly does not confer on FOIA requesters the authority to determine what statistical data ATF prepares and publishes in its annual reports.

More generally, there is no "clear and manifest" intent expressed in the 2008 appropriations language to open up the firearm trace database to FOIA requests and undo the "change in substantive FOIA law" effected by the 2005 Appropriations Act. *See City of Chicago*, 423 F.3d at 781. Indeed, the exemption from disclosure of "data previously available to the public under FOIA" effected by the 2005 Appropriations Act (*see id.*) has been repeatedly affirmed by Congress. Thus, the 2008 language that permits ATF to publish certain statistical reports should not be read as an implicit amendment of the exemption from release pursuant to FOIA. *See Fausto*, 484 U.S. at 453.

The use of the term "statistical aggregate data" in subpart (C) emphasizes that the disclosures contemplated are not of individual trace records in the ATF's database. Those terms are not defined in the appropriations acts, but their dictionary definitions are reasonably clear. *See In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 432-33 (9th Cir. 2011) (permitting examination of "ordinary, dictionary meaning"). "Statistical" is defined as "of, relating to, based on, or employing the principles of statistics." Merriam-Webster Online Dictionary (accessed May 16, 2019). "Statistics" in turn is defined as "a branch of

mathematics dealing with the collection, analysis, interpretation, and presentation of masses of numerical data." *Id*. "Aggregate" is defined as "formed by the collection of units or particles into a body, mass, or amount." *Id*. "Data" is "factual information (such as measurements or statistics) used as a basis for reasoning, discussion, or calculation." *Id*. Together, the terms plainly refer to statistics derived from the analysis and interpretation of an underlying set of numerical data—in this case, the firearm trace records accumulated in ATF's database. "Statistical aggregate data" are not individual records or compilations of those records, but statistics derived from those underlying records ("masses of numerical data").

The actual ATF annual statistical reports make clear the nature of the disclosures contemplated by subpart (C). For example, ATF analyzes the data in its Firearms Trace System database to determine on an annual basis for each state the number of firearms traced in that state, the numbers of each type of firearm recovered, and the top source states for traced firearms—among other statistics. *See, e.g.*, California 2017, https://www.atf.gov/docs/undefined/ cawebsite17183919pdf/download (visited May 16, 2019). Of course, while the reported statistics are derived from those records, they are not the records themselves.

CIR incorrectly redefines the terms "statistical aggregate data" as "nonidentifiable information culled from multiple sources." *See* Opening Br. at 29. The appropriations language does not include the term "nonidentifiable" or any related terms such as "anonymous" or "anonymized" data. While it is true that statistical aggregate data may be anonymized and not reveal personally identifiable information, that is not necessarily the case. For example, a FOIA requestor might ask for the annual number of firearm traces involving each licensed firearm dealer in the San Francisco Bay Area for the period 2000 to 2010. This would constitute statistical aggregate data, but because that data would be organized by firearm dealer, it would not be anonymized. As CIR notes, the release of trace data identifying "individual retail sellers" was one of the concerns motivating the Tiahrt Amendment. *See* Opening Br. at 32 (citation omitted).

CIR also reads "statistical" out of "statistical aggregate data." Thus, for example, CIR argues that ATF "could disclose the mere statistical number of firearms or a spreadsheet with a column redacting the identifying trace number." Opening Br. at 30. If subpart (C) permitted ATF to compile and produce all of the relevant firearm trace records in a spreadsheet as "aggregate data," that exception would swallow the disclosure prohibition. Of course, ATF cannot disclose the contents of the firearm trace database in part or whole, so it cannot produce

spreadsheets compiling those records, whether redacted or not.[1]  The information

that ATF can publish is limited to "statistical aggregate data" and not merely a

compilation of whatever firearm trace records a FOIA requester may wish to see.

Note that this is not a question of discretion as CIR argues.  *See, e.g.*,

Opening Br. at 23-24.  This is not a case, for example, where ATF has an existing

record reflecting the statistical data that CIR seeks, but is withholding it from

production pursuant to Exemption 3.  The question regarding whether ATF would

have to produce such information even if it did not appear in an ATF

"publication," *see* 125 Stat. 552, is not before the Court.  *See generally* Part II,

*infra*.

Finally, CIR's discussion of the potential format of production is not

relevant to the withholding question.  *See* Opening Br. at 35-41.  ATF does not

dispute that FOIA permits production in a variety of formats.  Thus, for example, if

ATF could lawfully produce the trace records, it could do so in hard copy or an

electronic format, including an electronic format that permitted the requesting

party to run its own statistical analyses.  Pursuant to the Tiahrt Amendment,

however, ATF is prohibited from doing so.

---

[1] CIR argues that ATF could release a "table of data (with a redacted column de-identifying all information)," but CIR has requested annualized data, and ATF is prohibited from disclosing any part of the trace records, including the date of the trace.  *See* Opening Br. at 37.

**D.     Disclosures of trace data by ATF in certain enforcement and administrative proceedings are specifically authorized and not relevant to CIR's FOIA request.**

CIR argues that ATF's disclosure of data in a "series of suits against ATF under the Administrative Procedure Act" should compel disclosure here.  Opening Br. at 35.

The Tiahrt Amendment, however, expressly permits the disclosure of the contents of the trace database (and other firearms data) in cases like those cited by CIR:

> [A]ll such data shall be immune from legal process, shall not be subject to subpoena or other discovery, shall be inadmissible in evidence, and shall not be used, relied on, or disclosed in any manner, nor shall testimony or other evidence be permitted based on the data, in a civil action in any State (including the District of Columbia) or Federal court or in an administrative proceeding <u>other than a proceeding commenced by the Bureau of Alcohol, Tobacco, Firearms and Explosives to enforce the provisions of chapter 44 of such title [18 U.S.C. §§ 921-931], or a review of such an action or proceeding</u> … .

2012 Appropriations Act, 125 Stat. 552, 609-610 (emphasis added).  Of course, ATF needs to be able to disclose trace data from its law enforcement database in enforcement actions and in order to defend its authority to pursue such actions under the Gun Control Act of 1968, 18 U.S.C. § 921, *et seq*. ("GCA").

The cases cited by CIR before the district court and this Court all involve challenges to ATF's authority under the GCA and thus fall within the scope of this provision.  *See, e.g., Ron Peterson Firearms, LLC v. Jones*, No. 11-cv-00678-

29

JEC/LFG, 2013 WL 12085975 (D.N.M. March 27, 2013) (federal firearms licensees challenged statutory authority of ATF under, inter alia, 18 U.S.C. § 923 to issue demand letter requiring certain sales reports and decision to target licensees in four border states as "arbitrary and capricious"); *10 Ring Precision, Inc. v. Jones*, No. SA-11-CA-663, 2012 WL 12883131 (W.D. Tex. July 2, 2012) (same); *National Shooting Sports Foundation v. Jones*, 840 F.Supp.2d 310 (D.D.C. Jan. 13, 2012) (same).[2]  Accordingly, the production of trace data as part of the administrative record was appropriate under the express terms of the Tiahrt Amendment.  There is no similar express authorization for release of data in response to FOIA requests.  Moreover, the ATF's assertion of authority to compile and publish certain aggregate statistical data pursuant to subpart (C) does not concede or in any way imply that a FOIA request can compel the agency to undertake a statistical analysis of the trace database at the direction of a plaintiff or requester.

Similarly, CIR argues that the production of an internal tracking spreadsheet in response to the FOIA request at issue here shows what ATF should have produced.  Opening Br. at 38-39.  ATF was able to produce an internal spreadsheet tracking a number of firearms traces involving prior law enforcement ownership,

---

[2] *National Shooting Sports Foundation v. Jones*, No. 11-cv-01401 is the same case cited by CIR as "*Nat'l Shooting Sports Foundation, Inc. v. Melson*, No. 11-cv-01401 (D.D.D. Sept. 12, 2011)."  Opening Br. at 36.

because that information was available in a record created outside of and not maintained in the Firearms Trace Systems database. SER 004.

Finally, the fact that ATF may have prepared and produced statistical information in prior actions does not provide a basis for disclosure here. *See* Opening Br. at 35-41. The ATF could not locate an existing record or records reflecting the "[t]total number of weapons traced back to former law enforcement ownership, annually from 2006 to the present," as requested by CIR. *See, e.g.*, SER 003-004. There was no record listing traces to law enforcement by year comparable to the chart cited by CIR, for example, that listed certain trace counts by jurisdiction. *See* Opening Br. at 37.

## III. THE DISTRICT COURT PROPERY DETERMINED THAT PRODUCING THE STATISTICAL DATA SOUGHT BY PLAINTIFF-APPELLANT WOULD REQUIRE ATF TO CREATE A NEW RECORD.

FOIA does not require an agency to create a document in response to a request. *National Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 161-62 (1975); *see also Zemansky v. U.S. E.P.A.*, 767 F.2d 569, 573-74 (9th Cir. 1985); *Snyder v. Dep't of Def.*, No. 14-cv-01746-KAW, 2015 WL 9258102, at *7 (N.D. Cal. Dec. 18, 2015). The district court correctly concluded that CIR's request for the "[t]otal number of weapons traced back to former law enforcement ownership, annually from 2006 to the present," would require ATF to do exactly that and create a new annualized statistical report based on data in the Firearms

Trace System database. *See* ER 14-16. Because FOIA cannot be used to compel

ATF to create a new statistical report, CIR's claim was appropriately dismissed.

ATF prepares a number of statistical reports every year, but, to date, ATF

has not prepared an annualized report detailing the number of firearms traced back

to "former law enforcement ownership." ER 312; Supplemental Excerpts of

Record ("SER") 3-4. The statistical reports that ATF prepares each year are

available on the agency's website. *See generally* "ATF—Data & Statistics,"

available at https://www.atf.gov/resource-center/data-statistics; *see* ER 310. These

reports do not include the data sought by CIR; nor was ATF able to identify any

responsive internal record including the requested statistical data in connection

with the agency's search in response to CIR's FOIA request. ER 312; SER 3-4.

Because there is no existing record, report, or publication at ATF that

includes the requested statistical data (*see* ER 312, SER 3-4), ATF would have to

identify, collect, and analyze the relevant contents of its Firearm Trace Database

and prepare a new statistical analysis to provide a responsive record. As the

district court concluded, CIR "does not seek individual records contained in the

FTS database, but instead seeks statistical aggregate data compiled from those

records reflecting the '[t]otal number of weapons traced back to former law

enforcement ownership, annually from 2006 to the present.'" ER 17. This is not

required by FOIA: "[A]n agency is not required to create new documents in order

to satisfy a FOIA request." *Larouche v. U.S. Sec. and Exchange Comm.*, 289

Fed.Appx. 231, 231-32 (9th Cir. 2008) (unpublished) (citing *Kissinger v. Reporters*

*Comm. for the Freedom of the Press*, 445 U.S. 136, 151-52 (1980)). While CIR

obviously would like to know how many firearms were traced back to "former law

enforcement ownership" in each year from 2006 to today, the agency is not

required to "answer questions disguised as a FOIA request." *Hudgins v. IRS*, 620

F.Supp. 19, 21 (D.D.C. 1985).

CIR argues that FOIA can be used to compel the production of records

stored in electronic databases even if retrieving those records "'require[s] the

application of codes or some form of programming'" to retrieve. Opening Br. at

48. That is not the issue here. ATF is not arguing that the firearm trace records (or

any other electronic records, including emails) are immune from production under

FOIA because they are stored in an electronic database or can only be retrieved by

an electronic search of that database. Rather, CIR's FOIA request for statistical

data related to weapons "traced back to former law enforcement ownership" is

problematic because it is not asking for the trace records themselves, but seeks

statistical data about the number and type of those records. The *National Security*

*Counselors* case cited by CIR provides a helpful discussion of a similar issue. As

the district court in that case explained:

> Producing a listing or index of records, however, is different than
> producing particular points of data (i.e., the records themselves).

33

> This is because a particular listing or index of the contents of a database would not necessarily have existed prior to a given FOIA request. … The same would be true of paper, rather than electronic, records. For example, if a FOIA request sought "an inventory of all non-electronic records created in 1962 regarding the Cuban Missile Crisis," an agency need not create an inventory if one did not already exist, though the agency would need to release any such non-electronic records themselves if they were requested and were not exempt from disclosure. Therefore, a FOIA request for a listing or index of a database's contents that does not seek the contents of the database, but instead essentially seeks information about those contents, is a request that requires the creation of a new record, insofar as the agency has not previously created and retained such a listing or index.

898 F. Supp. 2d at 271 (citation omitted). Here, CIR is seeking something like a list or index of certain firearm trace records, or, more precisely, certain statistical data derived from such a list or index. ATF cannot be compelled to conduct this statistical analysis under FOIA. *See id*. at 272 ("[T]he CIA may not be required to produce an index or database listing in response to a FOIA request … .").

*Amici curiae* appear to argue that whether the information requested from a database is a "new record" or not depends on what kind of search is required. Thus, for example, it is suggested that any data retrievable "with a simple query or series of queries constitutes an existing record for FOIA purposes." Dkt. No. 18 at 30. There are a number of objections to this test, including that it appears to conflate the terms "search" and "record" as used in the statute, *see, e.g.*, 5 U.S.C. § 552(a)(3)(C)-(D); and it is not clear how the Court would determine what

constitutes a "simple query."  In any event, the record here does not show that the "statistical aggregate data" sought by CIR could be retrieved with a "simple query."  In fact, the district court concluded that more than a simple search would be required.  ER 15-16.

Thus CIR is also incorrect when it argues that "a simple search of the FTS System would yield the results."  Opening Br. at 47.  ATF could search the Firearm Trace database to identify the trace records involving traces "back to former law enforcement ownership," but CIR is not asking for those records—and ATF is prohibited from producing them.[3]  Instead, CIR is impermissibly using FOIA to seek "information about" the database's contents without disclosure of the records themselves.  *See National Sec. Counselors*, 898 F. Supp.2d at 271.  Specifically, CIR is asking ATF to disclose how many records involving prior law enforcement ownership there are in each year going back to 2006.  To provide that information, ATF would need to (1) run searches on the database to identify the trace records themselves; (2) count those trace records in order to create the requested annualized statistical analysis of the contents of the database, and (3) then produce that new analysis.  (This is a simplified description—the actual

_____

[3] To the extent that the data sought here are records in the database that could be provided to plaintiff "through a query to the agency's database," as the Electronic Frontier Foundation suggests in its amicus brief, Dkt. No. 16 at 17, then the Tiahrt Amendment's prohibition on using appropriated funds to "disclose part or all of the contents of the Firearms Trace System database" would bar such disclosure.

process employed by ATF to prepare similar statistical analyses and ensure their accuracy and fair presentation is likely more involved.  ER 310; ER 310-311.) FOIA only requires ATF to go so far as step (1)—run a reasonable search—and then produce the records located by the searches.  What CIR seeks here—moving on to steps (2) and (3)—is not compelled by FOIA.

CIR is also incorrect when it characterizes its request as one requiring only the "redaction" of existing records.  *E.g.*, Opening Br. at 5-6, 16.  ATF does not claim that redacting a record creates a "new" record for the purposes of FOIA compliance.  The issue here is that ATF cannot produce firearm trace records from its database whether or not those records are redacted.  The disclosure prohibition is complete:  ATF cannot "disclose <u>part</u> or all of the contents of the Firearms Trace System database."  125 Stat. 552 (emphasis added).  Because ATF cannot produce firearm trace records in part, it cannot produce redacted records.

Additionally, the cases cited by CIR do not establish an entitlement under FOIA to the data analysis and production requested here.  *See* Opening Br. at 45-46.  For example, in *Bothwell v. CIA*, the plaintiff sought records in the possession of the CIA related to "individuals purportedly connected to the assassinations of President John F. Kennedy and Senator Robert F. Kennedy."  No. 13-cv-05439-JSC, 2014 WL 5077186, at *1 (N.D. Cal. Oct. 9, 2014).  In *Bothwell* and the other

cases cited, the plaintiffs sought the federal records themselves, not statistical data about the records; accordingly, they do not support CIR's FOIA request here.

Finally, it is not true that "[a] ruling in favor of the government's argument here would put many federal government databases beyond the reach of the FOIA," as CIR asserts. Opening Br. at 48. This case is about one particular law enforcement database that Congress has specifically identified and protected from public disclosure through the Tiahrt Amendment. That disclosure prohibition prevents CIR from obtaining the records it seeks and would ordinarily be able to obtain through FOIA (subject to statutory exemptions). Because the Tiahrt Amendment has no application beyond the firearm trace database, public access to other government databases is not implicated.

## CONCLUSION

For the reasons set forth above, this Court should affirm the district court.

Dated: May 22, 2019

Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

 s/ Robin M. Wall
ROBIN M. WALL
Assistant United States Attorney

Attorneys for Defendant-Appellee
U.S. DEPARTMENT OF JUSTICE

37

## CERTIFICATION OF COMPLIANCE WITH
## FRAP 32(a)(7)(C) AND CIRCUIT RULE 32-1

I certify that this brief complies with the above-referenced rules.  It is proportionately spaced, has a typeface of 14 points or more, and contains 8,934 words.

Dated:  May 22, 2019                                    Respectfully submitted,

                                                       DAVID L. ANDERSON
                                                       United States Attorney

                                                       *s/  Robin M. Wall*
                                                       ROBIN M. WALL
                                                       Assistant United States Attorney

## STATEMENT OF RELATED CASES

Appellee is not aware of any related actions within the meaning of Circuit

Rule 28-2.6.

Dated:  May 22, 2019                          Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

*s/  Robin M. Wall*
ROBIN M. WALL
Assistant United States Attorney

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  18-17356

I am the attorney or self-represented party.

**This brief contains**  8,934  **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**  s/Robin M. Wall  **Date**  May 22, 2019

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**  *Rev. 12/01/2018*