*Appeal No. 18-17356*

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

THE CENTER FOR INVESTIGATIVE REPORTING,
*Plaintiff-Appellant,*

v.

UNITED STATES DEPARTMENT OF JUSTICE,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Northern District of California, San Francisco
Case No. 3:17-cv-06557-JSC
Magistrate Judge Jacqueline Scott Corley

## REPLY BRIEF OF PLAINTIFF-APPELLANT
## THE CENTER FOR INVESTIGATIVE REPORTING

D. Victoria Baranetsky (CSB No. 311892)
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: 510.809.3160

Andrew P. Bridges (CSB No. 122761)
Meghan E. Fenzel (CSB No. 324139)
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500

Attorneys for Plaintiff-Appellant
THE CENTER FOR INVESTIGATIVE REPORTING

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ............................................................................1

ARGUMENT ..................................................................................4

I.  CONGRESS'S DECISION TO REPEAT THE TIAHRT
    AMENDMENT LANGUAGE IN THE 2012 CONSOLIDATED
    APPROPRIATIONS ACT WITHOUT EXPRESSLY CITING
    THE OPEN FOIA ACT OF 2009 MEANS THE ACT DOES
    NOT QUALIFY AS A WITHHOLDING STATUTE...................................4

II. CIR'S FOIA REQUEST FALLS UNDER THE DEFINITION OF
    "STATISTICAL AGGREGATE DATA" WITHIN EXCEPTION C
    OF THE 2012 TIAHRT AMENDMENT........................................8

    A.  Interpreting the Statutory Language of Exception C
        Is an Important and Discrete Step in the Court's Analysis. ...............8

    B.  The Government's Definition of "Statistical Aggregate
        Data" Does Not Exclude the Information CIR Requests....................9

    C.  Exception C Permits the Disclosure of "Annual
        Statistical Reports" *or* "Statistical Aggregate Data."........................11

    D.  The Government Has Presented an Interpretation of
        "Statistical Aggregate Data" to Multiple Other District
        Courts That Is Consistent with What CIR Requests. ..........................13

    E.  The Meaning of "Statistical Aggregate Data" in
        Tiahrt Exception C Does Not Force the Creation of New
        Records, and Conflation of Those Separate Issues Would
        Have Far-reaching Implications for Public Access to
        Information in Government Databases. .............................................15

III. CIR'S REQUEST FOR STATISTICAL AGGREGATE DATA
     DOES NOT REQUIRE ATF TO CREATE A NEW RECORD. ................16

i

# TABLE OF CONTENTS
## (continued)

Page

A.    There Is Consensus Among Courts and Congress That Searches for Statistical Aggregate Data Do Not Create New Records. ............17

B.    ATF Must Also Disclose the Data Because Production Does Not Require the Agency to Conduct Any "Analysis" or to Create a "Listing." ...............................................................................23

    1.    CIR requests information that may reside in a single column—and even, perhaps, a single cell— within search results of the ATF database. .............................25

    2.    Applying preexisting codes to retrieve responsive content from the FTS database does not qualify as "analysis" or production of a "listing." ....................................27

C.    Holding That Conducting and Providing Results of a Simple Query Would Amount to the Production of a New Record Would Undermine the Purpose of FOIA and Harm Government Transparency. ................................................30

CONCLUSION ...................................................................................31

Form 8. Certificate of Compliance for Briefs .........................................33

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*10 Ring Precision, Inc. v. Jones*,
   No. 11-cv-00663 (W.D. Tex. Jul. 2, 2012) ........................................................ 14

*Abdeljabbar v. Bureau of Alcohol, Tobacco & Firearms*,
   74 F. Supp. 3d 158 (D.D.C. 2014) ........................................................ 4, 5, 6, 7

*Carlson v. U.S. Postal Serv.*,
   504 F.3d 1123 (9th Cir. 2007) ........................................................ 9

*Chetal v. U.S. Dep't of Interior*,
   No. 18-CV-03731-EMC, 2019 WL 1283935 (N.D. Cal. Mar. 20, 2019) .......... 23

*CIA* v. *Sims*,
   471 U. S. 159 (1985) ........................................................ 31

*Ctr. for Investigative Reporting v. U.S. Dep't of Justice*,
   No. 17-CV-06557-JSC, 2018 WL 3368884 (N.D. Cal. July 10, 2018) ............. 23

*In re Del Biaggio*,
   834 F.3d 1003 (9th Cir. 2016) ........................................................ 10

*Fowlkes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
   139 F. Supp. 3d 287 (D.D.C. 2015) ........................................................ 6

*In re Glacier Bay*,
   944 F.2d 577 (9th Cir. 1991) ........................................................ 5, 6

*Hibbs v. Winn*,
   542 U.S. 88 (2004) ........................................................ 12

*Hudgins v. IRS*,
   620 F. Supp. 19 (D.D.C. 1985), *aff'd mem.*,
   808 F.2d 137 (D.C. Cir. 1987) ........................................................ 28

iii

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Long v. Immigration & Customs Enf't*,
    No. 17-cv-01097 (APM), 2018 WL 4680278
    (D.D.C. Sept. 28, 2018) ...................................................................18, 19, 22, 24

*Nat. Res. Def. Council, Inc. v. U.S. Envtl. Prot. Agency*,
    No. CV 17-1243 (RDM), 2019 WL 1755976 (D.D.C. Apr. 19, 2019) ..............24

*Nat'l Sec. Counselors v. CIA*,
    898 F. Supp. 2d 233 (D.D.C. 2012) .............................................................*passim*

*Nat'l Sec. Counselors v. CIA*,
    960 F. Supp. 2d 101 (D.D.C. 2013) ..................................................................24

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975) ...........................................................................................16

*Penn v. U.S. Dep't of Justice*,
    No. S-10-2494, 2012 WL 761741 (E.D. Cal. Mar. 7, 2012) ...............................6

*People for the Am. Way Found. v. U.S. Dep't of Justice*,
    451 F. Supp. 2d 6 (D.D.C. 2006) ......................................................................17

*Ron Peterson Firearms, LLC v. Jones*,
    No. 11-cv-00678 (D.N.M. Aug. 2, 2012) ..........................................................14

*Schladetsch v. U.S. Dep't of Hous. & Urban Dev.*,
    No. 99-0175, 2000 WL 33372125 (D.D.C. April. 4, 2000) ..................18, 19, 30

*Smith v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*,
    No. 13-13079, 2014 WL 3565634 (E.D. Mich. July 18, 2014) ...........................6

*Thompson Publ'g Grp. v. Health Care Fin. Admin.*,
    No. 92-2431-LFO, 1994 WL 116141 (D.D.C. Mar. 15, 1994) .........................17

*Yagman v. Pompeo*,
    868 F.3d 1075 (9th Cir. 2017) ...........................................................................29

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Yeager v. Drug Enf't Admin.*,
 678 F.2d 315 (D.C. Cir. 1982)...........................................................................25

*Zemansky v. U.S. Envtl. Prot. Agency*,
 767 F.2d 569 (9th Cir. 1985) ...........................................................................29


**STATUTES**

2012 Consolidated Appropriations Act,
 Pub. L. No. 112-55, 125 Stat. 552 (2011) ....................................................*passim*

Freedom of Information Act 2009, 5 U.S.C. § 552 ..........................................*passim*


**OTHER AUTHORITIES**

155/46 Congressional Record S3175-76 (Mar. 17, 2009)........................................7

The American Heritage Dictionary (5th ed. 2012)..................................................12

H.R. Rep. No. 104-795, 104th Congress, 2d Sess. 11 (1996) ...........................18, 25

H.R. Rep. No. 240, 110th Congress, 1st Sess. (2007)
 (House Report to the 2008 Appropriations Act), 2007 WL 2075231 ...............12

# INTRODUCTION

This case arose out of a journalist's public records request to provide detail for a news story about guns from government agencies used in crimes. While this is a straightforward legal case, it is a crucial one for ensuring government transparency. Two sets of statutory language are at issue. First, the meaning of "statistical aggregate data" under Exception C of the Tiahrt language in the 2012 Consolidated Appropriations Act,[1] is a question of first impression. This Court's interpretation of the Tiahrt exception will determine whether the public has *any* rights of access to data in the firearm tracing database (FTS) of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), as Congress expressly provided. Second, under the Freedom of Information Act (FOIA), this case addresses whether the 2012 Consolidated Appropriations Act qualifies as a withholding statute and whether the government must fulfill its search and production obligations for records in a database. A faulty interpretation of FOIA risks undermining the purpose of the strict requirements of FOIA Exemption 3 and effectively nullifying the purpose of the OPEN FOIA Act of 2009. Last, a finding that the search and production of records in a database amounts to creation of a

---

[1] Courts, the Government, and commentators often refer to the recycled language as the "Tiahrt Amendment," but recent appearances of the language were in original drafts of bills and did not come into the legislation by amendment. Pub. L. No. 112–55, 125 Stat. 552 (2011).

new record would go against decades of case law; undermine the purpose of the E-FOIA Amendments; and risk blocking access to a wide range of government records, which increasingly reside in databases, as *amici* have discussed. *See* EFF Br. at 2–3; Harvard Br. at 9.

The Court need employ only simple tools of statutory interpretation here. The plain language of these two provisions requires the ATF to disclose the records CIR seeks, and the statutory language aligns with important policy considerations. First, FOIA Exemption 3 does not apply because the 2012 Consolidated Appropriations Act fails to cite the OPEN FOIA Act of 2009 and thus fails to qualify for the exemption, plain and simple. Second, CIR's request for statistical aggregate data asks for the specific type of information ATF may disclose under Exception C of the Tiahrt Amendment.

ATF's final objection to disclosure, arguing that CIR's FOIA request seeks creation of a new record, ignores well-established case law that is technologically astute and aptly distinguishes searching and producing extant data from creating a new record. Here, ATF need perform only a simple query using preexisting codes to produce the information CIR requested. ATF would not create a new record because the agency has already stored and tagged the information for easy production without the need for any analysis or judgment on the part of agency personnel.

Not only has the Government failed to rebut all these points but its arguments also defeat themselves. First, the Government admits that Congress legislated new enactments of the Tiahrt Amendment language in 2010 and 2012, both of which fail to meet the requirements of FOIA Exemption 3. *See* Answering Br. at 18–19. Second, while disputing CIR's definition of "statistical aggregate data" under the Tiahrt Amendment language, the Government fails to establish that CIR's FOIA request went outside the scope of the meaning of the phrase. *Id.* at 26. Further, the Government fails to present a cogent argument that responding to CIR's request would require anything beyond the search and production typical of any FOIA request directed at a government database. *See id.* at 35. It incredulously claims that "statistical aggregate data" by definition requires analysis, and analysis involves creation of a new record, so producing statistical aggregate data must involve creation of a new record. *Id.* at 32. But all the government must do is run a simple query using preexisting codes to produce data in response to CIR's FOIA request for the "total number of weapons traced back to former law enforcement ownership, annually from 2006 to the present." 3ER328. The Government cannot show that simple production from an existing database, using those codes, constitutes "analysis."

## ARGUMENT

**I.   CONGRESS'S DECISION TO REPEAT THE TIAHRT AMENDMENT LANGUAGE IN THE 2012 CONSOLIDATED APPROPRIATIONS ACT WITHOUT EXPRESSLY CITING THE OPEN FOIA ACT OF 2009 MEANS THE ACT DOES NOT QUALIFY AS A WITHHOLDING STATUTE.**

As CIR argued in its opening brief, the Tiahrt Amendment does not fall within FOIA Exemption 3 because the 2012 Consolidated Appropriations Act—the current enactment of the Tiahrt Amendment—does not cite the OPEN FOIA Act of 2009, 5 U.S.C. § 552(b)(3). *See* Opening Br. at 17. The Government conceded in its brief that the "Tiahrt Amendment" was not a single event: instead, it is a catch-all name for a series of similar provisions enacted at different times. *See* Answering Br. at 15, 18–21 ("The 2012 and prior Appropriations Acts [are] collectively referred to as the Tiahrt Amendment . . . ."). And the Government conceded that the 2010 and 2012 Consolidated Appropriations Acts were "enacted after the date of enactment of the Open FOIA Act of 2009 and do not specifically cite to 5 U.S.C. § 552(b)(3) as currently required by Exemption 3." Answering Br. at 19 (internal quotations omitted). According to the OPEN FOIA Act, the failure to cite the exemption provision is fatal to the Exemption 3 claim.

Unable to provide any statutory argument regarding its fatal statutory problem, the Government hides behind the decision in *Abdeljabbar v. Bureau of Alcohol, Tobacco & Firearms* that this "d[oes] not need to be addressed" because a

*previous* enactment of the Tiahrt Amendment provided a permanent prohibition against disclosure. Answering Br. at 19 (quoting *Abdeljabbar*, 74 F. Supp. 3d 158, 174–75 (D.D.C. 2014)).

That previous enactment, at issue in *Abdeljabbar*, however, was obsolete and did not apply at the time of CIR's 2018 FOIA request. The Government agrees that the Tiahrt Amendment in the 2012 Consolidated Appropriations Act entirely replicates language of the 2008 and 2010 enactments, Answering Br. at 21, thereby admitting that the 2012 enactment "covers the whole subject of the earlier [enactments]." *In re Glacier Bay*, 944 F.2d 577, 581 (9th Cir. 1991) (citation omitted). Because Congress could not have intended for three identical provisions to be simultaneously in effect, the Tiahrt Amendment in the 2012 Consolidated Appropriations Act must be construed as a substitute for, and replacement of, earlier iterations. Because Congress did not cite to 5 U.S.C. § 552(b)(3) in the 2012 Tiahrt language or in the 2012 Consolidated Appropriations Act as Exemption 3 requires, neither the current enactment of the Tiahrt language in particular nor the 2012 Consolidated Appropriations Act as a whole is a withholding statute.

The cases that ruled that the previous enactments of the Tiahrt language "are still effective prospectively," *see, e.g.*, *Abdeljabbar*, 74 F. Supp. 3d at 175–76, are wrong. And they do not bind this Court. In most of those cases, the courts failed to analyze whether the earlier instances of the Tiahrt language remained effective.

They cited earlier decisions without any independent analysis. Opening Br. at 21
(citing *Fowlkes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 139 F.
Supp. 3d 287, 292 (D.D.C. 2015); *Smith v. Bureau of Alcohol, Tobacco, Firearms,
& Explosives*, No. 13-13079, 2014 WL 3565634, at *6 (E.D. Mich. July 18, 2014);
*Penn v. U.S. Dep't of Justice*, No. S-10-2494, 2012 WL 761741, at *6 n.3 (E.D.
Cal. Mar. 7, 2012)).

Even the one case that contained independent analysis, *Abdeljabbar*,
"overlook[ed] the line of cases establishing that repeal by implication is
appropriate where later versions of an act cover, and substitute for, earlier
versions." Opening Br. at 22 (citing *In re Glacier*, 944 F.2d at 581).

Moreover, and importantly, in all those cases the plaintiffs lacked legal
representation and typically did not brief the critical Exemption 3 question. *See,
e.g. Fowlkes*, 139 F. Supp. 3d at 292; *Smith*, 2014 WL 3565634, at *6; *Penn*, 2012
WL 761741, at *6 n.3. In *Abdeljabbar*, the court ruled without receiving the
plaintiff's response to the defendant's motion for summary judgment. 74 F. Supp.
3d at 165, n.1. Close review of the case law on which the Government relies thus
reveals that no court has adequately analyzed the applicability of Exemption 3 to
the 2012 Tiahrt language as part of a competent, two-sided proceeding.

Moreover, the Government's argument ignores the explicit purpose of the
OPEN FOIA Act. Concerned about an "alarming number of FOIA (b)(3)

exemptions being offered in legislation—often in very ambiguous terms—to the detriment of the American public's right to know," OPEN FOIA's co-sponsor Senator Patrick Leahy stated that "(b)(3) statutory exemptions should be clear and unambiguous, and vigorously debated before they are enacted into law." 155 Cong. Rec. S3175-76. The Act's express purpose was to stop "exemption creep" and to "shine more light on the process of creating legislative exemptions to FOIA" by making sure that exemptions are clear and explicit. *Id.*

As a guard against such "exemption creep," the OPEN FOIA Act requires exemptions to cite specifically to the provisions that authorize them; any statute that does not explicitly cite FOIA Exemption 3 cannot qualify for the exemption. *See id.* Thus, it cannot be the case that "Congress's uninterrupted use of this language in appropriations bills after 2009 supports the conclusion that Congress did not intend for the judiciary to depart from [its] long-standing position." Answering Br. at 21 (citing *Abdeljabbar*, 74 F. Supp. 3d at 175–76). Instead, the fact that Congress did not change the language and did not cite to 5 U.S.C. § 552(b)(3) in the 2012 Tiahrt Amendment is precisely why the judiciary should rule that the Tiahrt Amendment is not a withholding statute.

7

## II.  CIR'S FOIA REQUEST FALLS UNDER THE DEFINITION OF "STATISTICAL AGGREGATE DATA" WITHIN EXCEPTION C OF THE 2012 TIAHRT AMENDMENT.

CIR's request is for "statistical aggregate data," which the Government should disclose under Exception C of the Tiahrt Amendment. Opening Br. at 25. The Government sidestepped this central issue of statutory interpretation by conflating it with analysis of FOIA Exemption 3 and FOIA's "new record" doctrine. Answering Br. at 31. Instead, the Court should rule that (1) CIR's request falls under the express provision of Exception C of the Tiahrt Amendment; (2) that the definition of "statistical aggregate data" does not exclude the information CIR requests; (3) that Exception C allows disclosure of both "annual statistical reports" *and* "statistical aggregate data," which is not limited to only pre-existing reports; (4) that the Government has previously presented an interpretation of "statistical aggregate data" to multiple federal district courts consistent with CIR's argument; and (5) that the definition of "statistical aggregate data" does not by itself suggest that creation of new records is necessary to produce it, which would conflate two different issues in a way that would have far broader implications than the present case.

### A.  Interpreting the Statutory Language of Exception C Is an Important and Discrete Step in the Court's Analysis.

The Government's argument against disclosure also skips *the most* crucial step in this case: determining whether CIR's request falls within the scope of the

Exception C under the Tiahrt Amendment for "statistical aggregate data." Ninth Circuit precedent calls for a two-part inquiry to determine whether a statute falls under Exemption 3 of FOIA and permits withholding: after determining whether the withholding statute meets the basic requirements of Exemption 3 (the express citation to the OPEN FOIA Act, which CIR discussed above), courts then "determine whether the requested information falls within the scope of the withholding statute." *Carlson v. U.S. Postal Serv.*, 504 F.3d 1123, 1127 (9th Cir. 2007).

Here, the second step in the inquiry requires statutory interpretation of the language in the Tiahrt Amendment. This is a straightforward question: is CIR's FOIA request for "statistical aggregate data," as Exception C uses the phrase? If so, then Exception C explicitly allows disclosure. If not, then the request falls under Tiahrt's broader prohibition of disclosure of firearm trace data. *See* Consolidated and Further Continuing Appropriations Act of 2012, Pub. L. No. 112–55, 125 Stat. 552 (2011).

## B. The Government's Definition of "Statistical Aggregate Data" Does Not Exclude the Information CIR Requests.

Citing no authority, the Government peculiarly defines "statistical aggregate data" as "statistics derived from the analysis and interpretation of an underlying set

of numerical data." Answering Br. at 26.[2] The Government disputes CIR's interpretation that "statistical aggregate data" is non-identifying information culled from multiple sources. *Id.* at 27; Opening Br. at 29. At no point, however, does the Government directly address how CIR's FOIA request for the "[t]otal number of weapons traced back to former law enforcement ownership, annually from 2006 to the present" does or does not fall under the Government's definition. *See* 3ER328.

CIR's FOIA request seeks statistics, the "total number" of a specific set of firearm trace data from the ATF database during a specific time period. *See* Answering Br. at 26. That comports with the ordinary meaning of "statistical aggregate data." The Government concedes that the particular format data are released in does not affect whether data are "statistical aggregate data." *Id.* at 28. This conforms with CIR's argument that any of a variety of formats would be responsive. *See* Section III.B.1. The Government's description of the legislative history also supports the interpretation that CIR's request is for "statistical aggregate data." *See* Answering Br. at 27; *see also In re Del Biaggio*, 834 F.3d 1003, 1010 (9th Cir. 2016). According to the Government, Exception C's language

---

[2] As CIR shows below, the Government's definition—perhaps too conveniently—would automatically turn any disclosure of "statistical aggregate data" into the creation of a new record, which is at the heart of its improper conflation of the distinct questions of (1) whether the information qualifies for disclosure as "statistical aggregate data" and (2) whether the Government must create a new record in responding to CIR's request.

reflects Congress's intent to prevent disclosure of "individual trace records in the ATF's database." Answering Br. at 25. While the Government disputes that "statistical aggregate data" necessarily means anonymized data, *id.* at 27, it concedes that preventing disclosures that might invade privacy was "one of the concerns motivating the Tiahrt Amendment." *Id.* This acknowledges that, regardless of which interpretation the Court selects, Exception C was intended to prevent disclosure of identifying information. Opening Br. at 32; *see also* 2ER165–67; 2ER191–92. CIR's interpretation of the phrase properly reflects the statute's meaning and Congress's intent; the data CIR requests would not disclose any private information or impair any law enforcement investigations.

## C. Exception C Permits the Disclosure of "Annual Statistical Reports" *or* "Statistical Aggregate Data."

The statutory text surrounding Exception C in the Tiahrt Amendment language similarly supports holding that CIR's request falls within the meaning of "statistical aggregate data." The Government appears to argue that Exception C aimed to authorize publication of only ATF's annual reports and not standalone data, but the statute's text reflects that annual reports were not the exclusive focus of Exception C. *See* Answering Br. at 22–26, 28. Exception C expressly permits public release of two categories of ATF data: "annual statistical reports" "*or* statistical aggregate data." *See* Consolidated and Further Continuing Appropriations Act of 2012, Pub. L. No. 112–55, 125 Stat. 552 (2011) (emphasis

added). The Government appears to assume that "statistical aggregate data" would

be disclosed only in "annual statistical reports," but that argument wrongly rests

upon an assumption that Congress used redundant language. Congress's inclusion

of the words "statistical aggregate data" in addition to the reference to reports

clarifies that these words are not superfluous or insignificant and that the relevant

data may be disclosed outside formal reports. *See Hibbs v. Winn*, 542 U.S. 88, 101

(2004). The Government's overemphasis on existing annual reports reflects its lack

of a valid basis for arguing against disclosure of statistical aggregate data.

Exception C of the Tiahrt language expressly permits disclosure of "statistical

aggregate data" in addition to those "long-running series of statistical reports."

Answering Br. at 24 (citing H.R. Rep. No. 240, 110th Congress, 1st Sess. (2007)

(House Report to the 2008 Appropriations Act), available at 2007 WL 2075231).

Nor does "publication" within Exception C have the artificially narrow

meaning the Government urges. "Publication" derives from the root *publicare*,

which means "to make public." *Publication*, *The American Heritage Dictionary*

(5th ed. 2012). According to the American Heritage Dictionary, publication is not

limited to issuing a printed work but also means the "[c]ommunication of

information to the public." *Id.* Through both the formal issuing of "annual

statistical reports" and productions in response to FOIA requests for "statistical

aggregate data," Exception C permits ATF to make certain data from the firearms trace database public.

### D. The Government Has Presented an Interpretation of "Statistical Aggregate Data" to Multiple Other District Courts That Is Consistent with What CIR Requests.

The Government has previously interpreted the term "statistical aggregate data" as embracing the type of information that CIR seeks here. *See* Opening Br. at 24. In the U.S. District Court for the District of New Mexico, the Government defended its refusal to provide identities of firearms dealers who sold guns that were traced and in the FTS database. 2ER229. It contrasted that information with the type of information CIR seeks here, which is "statistical aggregate data":

> By contrast, the unredacted information that was included in the Administrative Record (indicating the number of firearms recovered from FFLs in particular states, without revealing the identities of those FFLs) constitutes "statistical aggregate data regarding firearms traffickers and trafficking channels," 125 Stat. at 610, the disclosure of which is permitted by the statute.

*Id.*

The Government's answering brief, at 29, wrongly stated that the Tiahrt Amendment "expressly permits the disclosure of the contents of the trace database" in cases like those that CIR cited. The Government took the *opposite* view in those cases, vigorously and successfully opposing disclosure of detailed data from the trace database, citing the Tiahrt Amendment. It was the "statistical aggregate data" language of Tiahrt Exception C, not the nature of the proceedings,

13

that justified the Government's limited disclosures. *See* 2ER218–29. The cases

CIR cited were not enforcement proceedings commenced by ATF or cases

reviewing proceedings commenced by ATF, the only cases in which the Tiahrt

Amendment allows broad disclosures. Instead, the cases involved firearms dealers

seeking declaratory and injunctive relief from ATF data reporting requirements.

*See Ron Peterson Firearms, LLC v. Jones*, No. 11-cv-00678 (ECF 71) at 1–2

(D.N.M. Aug. 2, 2012); *10 Ring Precision, Inc. v. Jones*, No. 11-cv-00663 (ECF

65) at 1–2 (W.D. Tex. Jul. 2, 2012). Again, in those cases, the Government

contrasted detailed disclosures that would reveal identifying information, which it

opposed providing, with the disclosure of redacted "statistical aggregate data" it

had made in the cases under Exception C to the Tiahrt Amendment. 2ER218–29.

The Government's arguments in the earlier lawsuits and its mischaracterization of

its positions in the cases CIR cited expose the Government's distortion of

Exception C here. *See* 2ER218–29.

Apart from the Government's previous acknowledgement that the type of

data CIR seeks is "statistical aggregate data," its previous disclosures reveal how

ATF's statistical aggregate data looks. *See* 2ER231–39. The Government's

exhibits in the earlier cases, including tables from the ATF database, both reveal

that the Government has disclosed this standalone information and illustrate

formats of data the Government has produced from the ATF database. *See id.* The

Court should take the Government's previous court submissions and disclosures into account, and ignore its effort here to explain them away, when interpreting CIR's request for "statistical aggregate data" under Exception C.

### E. The Meaning of "Statistical Aggregate Data" in Tiahrt Exception C Does Not Force the Creation of New Records, and Conflation of Those Separate Issues Would Have Far-reaching Implications for Public Access to Information in Government Databases.

Finally, whether CIR's FOIA request falls under Exception C of the Tiahrt Amendment is a separate question from whether the request triggers FOIA's "new records" doctrine. CIR addresses the "new records" doctrine below in Section III. As outlined above, this case raises three separate issues: the application of FOIA Exemption 3 to the Tiahrt Amendment, the interpretation of Exception C within the Tiahrt language, and the relevance of FOIA's "new records" doctrine to requests for statistical aggregate data.

The Tiahrt Amendment language narrowly applies only to data from the ATF database. *See* 125 Stat. at 610. "Statistical aggregate data" is a term in the Tiahrt Amendment. *See id.* FOIA, in contrast, applies to *all* U.S. government data. *See* 5 U.S.C. § 552. The term "statistical aggregate data" does not appear in FOIA. *See id.* Instead, FOIA refers to "report[s]" and "raw statistical data." *See* 5 U.S.C. § 552(e)(3).

The Government is wrong to conflate the questions of interpretation of "statistical aggregate data" under Tiahrt and what constitutes a new record under

FOIA. By interpreting the term "statistical" as requiring analysis, Answering Br. at 25–26, and then arguing that any "analysis" is creation of a new record, *id.* at 34, the Government effectively argues that FOIA's new record doctrine bars disclosure of all "statistical aggregate data." This is not only wrong, but it is also a dangerous interpretation with broad precedential consequences. The Court should separately consider the interpretation of Exception C of the Tiahrt Amendment language and the application of FOIA's new records doctrine to government databases. Conflating the two issues would create a confusing rule that would apply far beyond the narrow issue here about gun tracing data to reach all FOIA requests involving database queries.

## III.   CIR'S REQUEST FOR STATISTICAL AGGREGATE DATA DOES NOT REQUIRE ATF TO CREATE A NEW RECORD.

By using preexisting codes to search the ATF database, ATF can fulfill its statutory obligation to search for data under FOIA. *NLRB v. Sears, Roebuck & Co*., 421 U.S. 132, 161–62 (1975) (FOIA establishes a statutory right of access to all existing agency records). ATF's conduct of searches to extract information that has been organized by the categories and codes the Government designed into the database would not create a *new* record. The FOIA and the E-FOIA Amendments are clear that an agency shall make "reasonable efforts" to query government databases in response to FOIA requests, limited only when "such efforts would significantly interfere with the operation of the agency's automated information

16

system." 5 U.S.C. § 552(a)(3)(C). District courts in other jurisdictions, interpreting E-FOIA, reasoned that database queries do not implicate the "new records" doctrine. *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 270 (D.D.C. 2012) ("[S]orting a pre-existing database of information to make information intelligible does not involve the creation of a new record.") (citations and quotation marks omitted); *accord People for the Am. Way Found. v. U.S. Dep't of Justice*, 451 F. Supp. 2d 6, 14 (D.D.C. 2006) (concluding "[e]lectronic database searches are thus not regarded as involving the creation of new records") (citations and quotation marks omitted).

### A. There Is Consensus Among Courts and Congress That Searches for Statistical Aggregate Data Do Not Create New Records.

The Government claims that searching the ATF database is "not the issue here," Answering Br. at 33, but that is precisely the issue. Courts and Congress have provided explicit guidance for over two decades on this point: agencies must search databases for statistical aggregate data. *See* Pub. L. No. 104-231, 110 Stat. 3048 (1996) (Electronic FOIA Amendments). Even before the E-FOIA Amendments, courts held that searches for aggregate data in databases were appropriate under FOIA. *See, e.g., Thompson Publ'g Grp. v. Health Care Fin. Admin.,* No. 92-2431-LFO, 1994 WL 116141, *1 (D.D.C. Mar. 15, 1994) (noting that "an agency is required to conduct relatively simple computer searches" of "existing records").

17

In 1996, Congress passed the E-FOIA Amendments to clarify and ensure that advances in new technology would not frustrate the purpose of FOIA. Congress recognized that, while FOIA obligations remained consistent, the nature of searches had changed, stating, "[c]omputer records found in a database rather than in a file cabinet may require the application of codes or some form of programming to retrieve the information." H.R. Rep. No. 104-795, 104th Congress, 2d Sess. 11 (1996).

Following the E-FOIA Amendments, courts have applied this principle broadly. *See Long v. Immigration & Customs Enf't,* No. 17-cv-01097 (APM), 2018 WL 4680278, at *8 (D.D.C. Sept. 28, 2018) ("[N]either sorting a pre-existing database of information to make information intelligible, nor extracting and compiling data . . . as to any discrete pieces of information that [an] agency does possess in its databases, amounts to the creation of a new agency record.") (internal quotation omitted, alterations in original); *Schladetsch v. U.S. Dep't of Hous. & Urban Dev.*, No. 99-0175, 2000 WL 33372125, at *3 (D.D.C. April. 4, 2000) (querying a database is a "search tool" permitted under FOIA "and not the creation of a new record").

The Government's silence regarding *Long* and *Schladetsch* suggests it is unable to distinguish those persuasive cases. In both *Long* and *Schladetsch* the courts held that searches within databases—much more complicated in those cases

18

than the searches necessary here—did not trigger the new records doctrine under FOIA. The reasoning in those cases supports fulfilling CIR's much simpler request for statistical aggregate data, requiring a simple query by applying existing codes and not producing a new record. In *Long*, the plaintiffs sought monthly case-by-case updates and data regarding deportations under two Immigration and Customs Enforcement (ICE) programs. *Long*, 2018 WL 4680278, at *1. ICE conceded that such a search would not be creation of a record but still attempted to withhold data by arguing that matching requests with the appropriate database field and compiling data would be creation of a new record. *Id* at *2. The court denied ICE's motion for summary judgment, finding nothing in the record supporting ICE's "hyper-technical rhetoric" arguing that the plaintiffs' request required creation of a new record. *Id.* at *7.

Similarly, in *Schladetsch*, HUD conceded that it possessed in its databases the discrete pieces of information that Mr. Schladetsch sought, specifically digital records of unpaid refunds for loans paid during a specific time period. *Schladetsch*, 2000 WL 33372125, at *1–2. The court held that extracting and compiling that data did not amount to the creation of a new record. *Id.* at *3. The court went further, holding that *creating the programming* necessary to conduct a search and the compiling of the data resulting from such a search would not constitute the creation of a new record. *Id.*

In line with the E-FOIA Amendments and relevant case law, this Court should hold that an agency must fulfill its obligations under FOIA to conduct a simple and reasonable search of government databases. Where relevant data fields already exist and a simple query will generate responsive data, the Government will create no new records. As the Government concedes here, the records exist within the FTS database, and they are not immune from production just because they reside in a database. Answering Br. at 33. As a result, ATF can produce data responsive to CIR's request without undue burden.

Public databases provide an illustrative example of how simple queries function. For example, the Integrated Database, an online database from the Administrative Office of the U.S. Courts tracks cases in the federal courts. *Integrated Database (IDB)*, https://www.fjc.gov/research/idb.[3] Just as trace records within FTS are categorized and tagged using codes, the Integrated Database is organized and tagged according to various fields, including the circuit and district in which a case was filed, the nature of the suit, and the filing date. *Id.*; *see* Figure 1. With a simple query of the Integrated Database, CIR could identify the statistical aggregate number of how many Freedom of Information lawsuits have been filed in the Ninth Circuit since 2006.[4] *See* Figure 2. In the Integrated Database, all

---

[3] CIR has moved for judicial notice of the U.S. Courts database. *See* Dkt. 36.

[4] For the Court's reference, this query is available online at

20

lawsuits filed under the FOIA are tagged with code "895." Running a quick query using this predefined code returned both a list of all relevant proceedings as well as the total number of such proceedings: 879.



Figure 1: Codes for U.S. Courts Integrated Database

---

https://www.fjc.gov/research/idb/interactive/IDB-civil-since-1988?circuits%5B%5D=9&nos%5B%5D=895&prose=All&DOCKET=&classact=All&TITLE=&SECTION=&FILEDATE_op=%3E&FILEDATE%5Bvalue%5D=20060101&FILEDATE%5Bmin%5D=01%2F01%2F2006&FILEDATE%5Bmax%5D=&TERMDATE_op=%3E&TERMDATE%5Bvalue%5D=&TERMDATE%5Bmin%5D=&TERMDATE%5Bmax%5D=&items_per_page=25.

Items per page

25 [ ] Apply   Reset

| | Circuit | District | Office | Docket Number | Plaintiff | Defendant | Origin | File Date | Jurisdiction | Nature of Suit | Termination Date | Procedural Progress | Disposition | Pro Se |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| [view] | 9 | 71 | 3 | 0601698 | AMERICAN CIVIL LIBERTIES UNION | UNITED STATES DEPARTMENT OF DE | 1 | 03/07/2006 | 2 | 895 | 05/25/2006 | 4 | 6 | 0 |
| [view] | 9 | 71 | 3 | 0601743 | POULSEN | UNITED STAES CUSTOMS AND BORDE | 1 | 03/07/2006 | 2 | 895 | 09/26/2006 | 5 | 6 | 0 |
| [view] | 9 | 71 | 3 | 0603099 | SHAFF | THE UNITED STATES DEPARTMENT O | 1 | 05/09/2006 | 2 | 895 | 09/11/2006 | 1 | 12 | 1 |
| [view] | 9 | 71 | 3 | 0603886 | PERFORMANCE CONTRACTING, INC. | UNITED STATES GENERAL SERVICES | 1 | 06/21/2006 | 2 | 895 | 08/03/2006 | 1 | 12 | 0 |
| [view] | 9 | 71 | 4 | 0602777 | SAKAMOTO | U.S. OFFICE OF PERSONNEL MANAG | 1 | 04/24/2006 | 2 | 895 | 05/17/2006 | 2 | 0 | 1 |
| [view] | 9 | 72 | 2 | 0600228 | WIGHT | SOCIAL SECURITY ADMINISTRATION | 1 | 02/02/2006 | 2 | 895 | 09/29/2006 | 1 | 14 | 1 |

Figure 2: Extract of Result of Query for Ninth Circuit FOIA Cases since 2006

Returning the results to this illustrative query did not require any person to "create" or "compile" data. The database, by its nature, already contained all the responsive data, organized according to the variables we sought: court, subject matter, and date. Producing the number of relevant cases was a simple matter of data extraction. *See also Long*, 2018 WL 4680278, at *4. Similarly, the ATF database already categorizes the data by the relevant variables: origin, trace, and date. Using the Integrated Database is not substantially different from querying the FTS database: to respond to CIR's request, ATF need only conduct a simple query using its own "close-out" codes for weapons traced to law enforcement. Thus, because the data CIR seeks already exists and the trace database is already

22

structured to make retrieving this data both possible and reasonable, responding to CIR's request would not require ATF to create a new record.

**B.     ATF Must Also Disclose the Data Because Production Does Not Require the Agency to Conduct Any "Analysis" or to Create a "Listing."**

The Government devotes many pages to *National Security Counselors,* a case with no precedential value in this Court[5] and with questionable logic. Even the *National Security Counselors* court noted that the CIA's withholding of aggregate data under its policies would have "perverse practical consequences" and recognized that the distinction between permissible searches and creation of new records remained "somewhat muddled." *Nat'l Sec. Counselors*, 898 F. Supp. 2d 270, 272. That court read "tension" into the relationship between the "new records" doctrine and the express intent of Congress in the E-FOIA Amendments. *See id.* at 270. The same court later characterized *National Security Counselors* as

---

[5] It appears that neither this Court nor any other federal appellate court has adopted the content-index distinction of *National Security Counselors*. Within this circuit, CIR could find only two rulings from district courts that cited the case. One was the court below in this proceeding, *Ctr. for Investigative Reporting v. U.S. Dep't of Justice*, No. 17-CV-06557-JSC, 2018 WL 3368884, at *10 (N.D. Cal. July 10, 2018); the second cited it only for its holding that agencies need not create new records in response to data requests, and not for its muddy distinction between database content and a "listing" of that content. *Chetal v. U.S. Dep't of Interior*, No. 18-CV-03731-EMC, 2019 WL 1283935, at *5 (N.D. Cal. Mar. 20, 2019) (ordering the agency to produce information from a known database after the agency conceded such data existed). In short, the content-index distinction for government databases under FOIA is not established doctrine or binding precedent, and it is not even a useful device.

"legal hair-splitting" and "fraught with tension," *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 160 n.28 (D.D.C. 2013), and later cases in the same district have not followed its garbled reasoning. *See Nat. Res. Def. Council, Inc. v. U.S. Envtl. Prot. Agency*, No. CV 17-1243 (RDM), 2019 WL 1755976, at *6 (D.D.C. Apr. 19, 2019) (expressly disregarding *National Security Counselors*' ruling on FOIA response time limits); *Long*, 2018 WL 4680278, at *4 (holding that a query for individual and aggregate data did not require creation of a new record). Still, the Government grasps onto *National Security Counselors*, which states that an agency must produce the *content* of a database but need not conduct analysis or compile an "inventory" or "listing" under the new records doctrine. *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 271–272.

This Court should not follow *National Security Counselors* on this point. To the extent it chooses to do so, however, as CIR shows below, *National Security Counselors* still favors disclosure because CIR seeks only extant information and its request does not require ATF to conduct any analysis or analytical "listing." *See id.* Thus, even under the single case the Government heavily relies on, ATF cannot escape its statutory obligations to search and release the data CIR requested.

    **1.**     **CIR requests information that may reside in a single column—and even, perhaps, a single cell—within search results of the ATF database.**

Under *National Security Counselors*, the Government must disclose information even if it "require[s] the application of codes or some form of programming to retrieve the information." 898 F. Supp. 2d at 270 (quoting H.R. Rep. 104–795, at 22); *see also Yeager v. Drug Enf't Admin.*, 678 F.2d 315, 321 (D.C. Cir. 1982) ("Although accessing information from computers may involve a somewhat different process than … manually-stored records, these differences may not be used to circumvent the full disclosure policies of the FOIA."). *National Security Counselors* describes "content" as "records found in a database . . . [that] may require the application of codes or some form of programming to retrieve." 898 F. Supp. 2d at 270 (quoting H.R. Rep. 104–795, at 22 (1996)).

CIR has always argued that its FOIA request seeks information the FTS database *already contains*. *See* 1ER007. The Government does not dispute that fact. Indeed, the Government recognized that this case concerns ATF's obligation to produce *data from* ATF's Firearm Trace System. *See id.* Similarly, ATF's expert candidly recognized that CIR's request "concerns law enforcement data from ATF's Firearms Trace System database." 3ER311 at ¶ 23. (Houser Affidavit 1.)

In response to CIR's FOIA request, the Government need only run a search on the FTS database and produce nonexempt portions of the query results. Judging

from data ATF has released in other proceedings, CIR believes that the information

it seeks can be produced in any of three different ways. Answering Br. at 29–31.[6]

First, ATF can release a single data entry point in a single cell from a FTS

database query result that indicates the total number of firearms traced to law

enforcement. As the table below shows, for example, the ATF database produced

the number "105" in response to a request for statistical aggregate data on firearms

from Florida recovered in Mexico. ATF could meet its statutory obligation under

FOIA by releasing a similar sum. *Cf.* Answering Br. At 25.

| FY2010 Recovery in Mexico excluding duplicates ANY DEALER where purchaser Identified(incl ZFFL) (Trace entry date - recovery date) is less than 366 days | |
| --- | --- |
| ST | TRC CNT |
| TX | 1998 |
| CA | 1016 |
| AZ | 783 |
| IL | 181 |
| NM | 130 |
| FL | 105 |

2ER231 (*ATF statistical aggregate data from 11-cv-1401*).

Second, the Government could produce a column of search results reflecting

all the counted law enforcement guns and redacting columns with identifying

information. The format would be similar to the table below that ATF produced,

providing statistical aggregate data by FFL on high-caliber firearms.

---

[6] CIR does not restrict itself to these three ways or waive its argument that
responsive production in *any* format is appropriate.



2ER239 *(ATF statistical aggregate data from 11-cv-1401)*.

Last, the Government could produce the metadata within the ATF database divulging the number of records that matched particular query codes. Such data, sometimes referred to as "hit counts," "search results," or simply "count" are automatically generated with any query. For example, the U.S. Courts Integrated Database included metadata on the total number of search results (879) when also displaying individual results of a query. All of these formats are likely available for the existing records in the FTS database, based on ATF's prior disclosures.

### 2. Applying preexisting codes to retrieve responsive content from the FTS database does not qualify as "analysis" or production of a "listing."

Contrary to the Government's assertions, CIR's FOIA request does not require ATF to conduct any analysis or research, or to expend agency resources, to compile an analytical "listing." Under the *National Security Counselors* framework, agencies have no obligation to conduct analysis or to "conduct research by 'answer[ing] questions disguised as a FOIA request.'" 898 F. Supp. 2d

27

at 269 (quoting *Hudgins v. IRS*, 620 F. Supp. 19, 21 (D.D.C. 1985), *aff'd mem.*, 808 F.2d 137 (D.C. Cir. 1987)). CIR agrees with this point (which the court drew from elsewhere) in the otherwise flawed *National Security Counselors* decision. The court in that case also ruled that compiling an inventory-like listing or producing an "index of a database's contents," *id.* at 271, is impermissible. To the extent that an index of a database's contents is already a record, however, there is no reason to exclude an index from disclosure because of its nature. But that is not at issue here; CIR's request seeks no inventory-like listing or index of a database's contents. CIR merely seeks discrete and precisely targeted information from the FTS database.

The Government complains that providing the responsive data would require it to go through a laborious 3-step process requiring a search, analysis, and creation of a listing,[7] but that argument is disingenuous. First, the Government has failed to show how it must conduct any "analysis" to produce the requested information. If the alleged "analysis" is the simple counting of trace records falling into a particular category, ATF need not do any arithmetic because the FTS database already appears to contain the responsive count, as CIR discussed above. Nor can

---

[7] The Government claims it must "(1) run searches on the database to identify the trace records themselves; (2) count those trace records in order to create the requested annualized statistical analysis of the contents of the database, and (3) then produce [the] new analysis." Answering Br. at 35.

28

ATF legitimately claim that a simple query of the FTS database using pre-existing codes is "analysis." By ATF's multiple concessions, the FTS database structures data and includes the relevant close-out codes to allow simple queries without the need for any "analysis." *See* Answering Br. 5–6; 3ER311 (Houser affidavit 1).

Moreover, in contrast to some FOIA requests in other cases, CIR's request is not a research question in disguise. *Compare Zemansky v. U.S. Envtl. Prot. Agency*, 767 F.2d 569, 573 (9th Cir. 1985) (demanding EPA to answer questions "under several statutes and regulations other than the FOIA"); *with Yagman v. Pompeo*, 868 F.3d 1075, 1078, 1081 (9th Cir. 2017) (finding that even a broad request for "[r]ecords/information" on "the names and company/organization affiliations of any CIA employees, agents, operatives, contractors, mercenaries, and/or companies who are alleged to have engaged in torture of persons" constituted a request for records under FOIA rather than a question). Instead, CIR's targeted request requires only that ATF query one specific database using codes that it already uses for its own purposes and produce responsive data that already exists.

Finally, the request does not require ATF to *compile* an inventory-like listing or index of the contents of the FTS database. Instead, CIR only seeks information that already exists. It seeks an automated response to a categorization the Government has already created and retained in a pre-existing format of the FTS

database. Even *National Security Counselors* permitted disclosing indices of database contents if the government "*previously created and retained* such a listing or index." 898 F. Supp. 2d at 271 (emphasis added).

### C.     Holding That Conducting and Providing Results of a Simple Query Would Amount to the Production of a New Record Would Undermine the Purpose of FOIA and Harm Government Transparency.

Adoption of the Government's faulty FOIA interpretation would reach far past the "one particular law enforcement database" at issue here and risk undermining the purpose of FOIA and the E-FOIA Amendments. *See* Answering Br. at 37; *see also* EFF Br. at 2–3; Harvard Br. at 9.

Fulfilling CIR's request would comport with the purpose of the E-FOIA Amendments, which call for searches of government databases so long as they do not "significantly interfere" with government systems. 5 U.S.C. § 552(a)(3)(C). Contrary to the Government's assertion, the district court below did not find that "more than a simple search would be required." Answering Br. at 35. The district court suggested—and the Government agreed—that fulfilling this particular request is "not that hard." 2ER055 (Tr. at 28). Courts have recognized the Government's obligation to do far more than is necessary here. *See, e.g., Schladetsch*, 2000 WL 33372125, at *2 (D.D.C. Apr. 4, 2000) (ordering HUD to produce data that would take 185 hours to produce at a cost of more than $14,000).

Also, a ruling that this production would be the creation of a new record would be out of step with the purpose of the new records doctrine: limiting the burden FOIA places on government agencies. It would be even further out of step from the "mandate of FOIA" favoring "broad disclosure of Government records," *CIA* v. *Sims*, 471 U. S. 159, 166 (1985), and E-FOIA's intent to "use new technology to enhance public access to agency records and information." Pub. L. No. 104-231, 110 Stat. 3048 (1996). Where search and production are simple, permitting withholding would not effectuate the purpose of the law.

Further, and most importantly, the Government's interpretation would shut off public access to a plethora of other data held in government databases. This case has mobilized *amici curiae* that recognize the importance of databases in facilitating the public's right to access government information and statistics. *See* EFF Br. at 2; Harvard Br. at 9. As the *amici* have discussed, the public's ability to access the growing amount of government information in databases depends upon a right to access the type of data at issue in this case. *See, e.g.*, EFF Br. at 5.

## CONCLUSION

Because the Consolidated Appropriations Act is not a withholding statute under FOIA Exemption 3, CIR's request is for "statistical aggregate data" that Tiahrt Exception C expressly allows, and querying government databases using existing codes does not compel creation of a new record, CIR respectfully requests

31

that this Court reverse the district court's ruling and remand with instructions that

the district court order ATF to produce the records CIR requested.


Dated: July 12, 2019                Respectfully submitted,


                                    By: *s/D. Victoria Baranetsky*
                                        D. Victoria Baranetsky

                                    The Center For Investigative Reporting
                                    1400 65th St., Suite 200
                                    Emeryville, CA 94608
                                    Telephone: 510.809.3160

                                    Andrew P. Bridges
                                    Meghan E. Fenzel
                                    Fenwick & West LLP
                                    801 California Street
                                    Mountain View, CA 94041
                                    Telephone: 650.988.8500

                                    Attorneys for Plaintiff-Appellant
                                    THE CENTER FOR INVESTIGATIVE
                                    REPORTING

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 18-17356

I am the attorney or self-represented party.

**This brief contains 6,973 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** *s/D. Victoria Baranetsky* **Date**: July 12, 2019
*(use "s/[typed name]" to sign electronically-filed documents)*

33